Abe Maxim **DRAISNER**, Appellant,

v.

**DISTRICT OF COLUMBIA**, Appellee.

No. 1928.

Municipal Court of Appeals for the
District of Columbia.

Argued Jan. 28, 1957.

Decided April 12, 1957.

Miller W. Marshall and Foster Wood,
Washington, D. C., for appellant.

Hubert B. Pair, Asst. Corporation Counsel, with whom Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and
HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellant was charged with a violation of the Real Estate and Business Brokers' License Act, Code 1951, § 45–1401 et seq., in that "on * * * the 1st day of July" 1956 he "did then and there act and assume to act as a real-estate broker without first having obtained a license so to do issued by the Real Estate Commission of the District of Columbia, * * *." The case was tried to a jury; appellant was convicted and sentenced; this appeal followed.

The principal error complained of involves the construction placed on the Act by the trial court in its charge to the jury. The specific issue is whether a person who, for a commission, acts as a broker in negotiating a sale of real estate *on behalf of himself and others associated with him in a joint enterprise* is required to be licensed as a real-estate broker under the terms of the Act. Appellant, contending that the Act exempts such a person, submitted prayers to that effect; the court denied them and refused to so charge the jury.

The pertinent sections of Code 1951, § 45–1401 et seq., are set forth below.[1]

---

1. § 45–1401: "* * * [I]t shall be unlawful * * * for any person, * * * to act as a real-estate broker, * * * or assume to act as such, without a license issued by the Real Estate Commission of the District of Columbia."

   § 45–1402: "Whenever used in this chapter 'real-estate broker' means any person, * * * *who, for another and* for a * * * *commission,* * * * or who, with the intention or in the expectation or upon the promise of receiving or collecting a * * * commission, * * * sells, * * * or offers or attempts or agrees to negotiate a sale, * * * of an estate or interest in real estate, * * *.

   *       *       *       *       *

While contending that he was a licensed real-estate broker in Maryland until the last of July 1956, appellant conceded he did not have such a license in the District while the transactions herein complained of were conducted. The evidence on the part of the prosecution showed that on two occasions—July 20 and 24, 1956—he submitted to the owner of real estate in the District a standard-form contract for the sale of her property; both contracts bound her to pay a commission to the appellant as broker; the first contract described the purchaser as "Mrs. Aimee Hechler, for a syndicate being formed"; the second named "Mr. Ralph Markham, for a syndicate to be formed", as purchaser. The owner refused to accept the first offer, but in writing accepted the second, after reducing the amount of commission to be paid to appellant. Appellant testified that he was to be a member of a syndicate that was to buy the property; that one Myron Heckler, a member of the syndicate who lived in New York, had furnished a check for the deposit mentioned in the contract; that after the second contract was signed by the owner, Heckler and several of his associates came down from New York to Washington, inspected the property, talked with the owner, and appellant told her that Heckler and himself were the actual buyers and were forming a syndicate.

Counsel for appellant contends that Congress intended that two elements be present before a person is required to secure a license, namely, (1) receipt of a commission, or the intention or expectation of receiving one, and (2) acting for *another*.

We agree. As to the first element, both contracts provided that appellant was to receive a commission; he testified that no actual commission was to be paid; that the reason for inserting the provision for a commission was to enhance the amount of the offer in the eyes of the owner; and that if the jury believed his client's testimony, he was entitled to an acquittal because one of the elements of the District's case was not proven to the satisfaction of the jury. A direct answer is that the jury was at liberty to either believe or disbelieve appellant's testimony; it presumably did not believe it.

Counsel's second contention is that so long as his client was *one* of the purchasers, it should have been held that he was not acting for *another*. We do not agree. Stating the contention in different language, it amounts to saying that if one as an intermediary negotiates with the owner for the sale of real estate, the purchasers, to be the one negotiating and others associated with him, no license is required.

No precedent on the exact question has been cited and independent research does not disclose any decision on the precise point. We therefore construe the statute. Its provisions must be construed in the light of the purpose of the Act and the evils it was designed to protect against. It was passed to protect the public interest against unethical practices by those engaged in the buying and selling of real estate while acting in a representative capacity.[2] It is certainly in the public interest that persons engaged in such enterprises be initially screened to determine whether they possess the necessary technical qualifications

"One act for a compensation or valuable consideration of * * * selling real estate for or of another, or offering for another to * * * sell, * * * real estate, * * * shall constitute a person, * * * a real-estate broker,
* * *.

* * * * *

"The provisions of * * * [the Act] shall not apply to * * * any person, * * * who, as owner * * * shall perform any of the acts aforesaid with

reference to property owned * * * by them, * * *." (Emphasis supplied.)
§ 45–1416: "Any person * * * violating any provision of this * * * [Act] shall upon conviction thereof, * * * be punished by a fine of not more than $500, or by imprisonment for a term not to exceed six months, or by both such fine and imprisonment, in the discretion of the court; * * *."

2. Eberman v. Massachusetts Bonding & Ins. Co., D.C.Mun.App., 41 A.2d 844.

and are "trustworthy." [3] The Real Estate Commission has the power, after issuing a license, to suspend or revoke it, if the licensee has

"(a) Made any substantial misrepresentation;

"(b) Made any false promises of a character likely to influence, persuade, or induce;

\* \* \* \* \* \*

"(h) Demonstrated such unworthiness or incompetency to act as a real-estate broker \* \* \* as to endanger the interests of the public;

\* \* \* \* \* \*

"(j) Been guilty of any other conduct, \* \* \* which constitutes fraudulent or dishonest dealing; \* \* \*." [4]

While no attempt was made in the original Act, Act of Aug. 25, 1937, 50 Stat. 787, ch. 760, § 2, to require a license for one who was acting for himself, Congress at that time being apparently of the view that the public only needed protection against those who were acting in a representative capacity, on Aug. 10, 1939, 53 Stat. 1352, ch. 664, § 3, Congress amended the 1937 Act in a significant particular and provided among other things that the Act as amended should thereafter apply to one

"\* \* \* who is engaged in the business of erecting houses or causing the erection of houses for sale on his, \* \* \* land and who sells, offers, or attempts to sell such houses, or who, as owner \* \* \* and as a whole or partial vocation, sells, \* \* or \* \* \* offers or attempts to sell

3. Code 1951, § 45–1404.

4. Code 1951, § 45–1408.

or to negotiate the sale of any lot or lots in any subdivision of land comprising ten lots or more: \* \* \*." [5] It was obviously the considered purpose of Congress to protect the public more adequately by enlarging the classes of persons required to secure licenses.

Bearing in mind the protection of the public interest, is there any less danger of fraud or misrepresentation when a man is allegedly acting both for himself and others? To carry this contention of appellant's to its logical conclusion, if a man had a 1 percent share in a purchase and his associates had the other 99 percent, then the man with the slight interest could with impunity carry on a large real-estate brokerage business without the permission or supervision of the Real Estate Commission, so long as he retained a small interest in the transaction. We do not feel that Congress ever intended this result.

■ The court very definitely instructed the jury that if it found that the appellant was attempting to negotiate the purchase for himself *only,* or if it found that the two persons named in the contracts were "straw parties" acting on behalf of the appellant *only,* then it should acquit. This was all the appellant was entitled to.

■ There was ample evidence to support the proposition that appellant was acting *for himself and others* and that he intended and expected the owner to pay him a commission of $6,500. The jury was accordingly amply justified in finding him guilty. We do not feel the other error complained of merits discussion.

Affirmed.

5. Code 1951, § 45–1402.