Arthur M. WAGMAN, Appellant,

v.

**DISTRICT OF COLUMBIA, Appellee**

**No. 2196.**

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 22, 1958.

Decided Feb. 12, 1959.

Rehearing Denied March 2, 1959.

A. J. Spero, Washington, D. C., with whom Josiah Lyman and Ford E. Young, Jr., Washington, D. C., were on the brief, for appellant.

Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellant was convicted by a jury of acting as a real-estate broker without first having obtained a license from the Real Estate Commission in violation of Code 1951, § 45–1401. His principal contentions in this appeal are that the evidence was insufficient to warrant the submission of the case to the jury and that the court erred in its charge.

While the record is quite voluminous, an intensive study of it reveals little divergence concerning the essential facts. It discloses

that appellant is a member of the local bar; that for some years Beatrice Tonkins and her family have been his clients; that as the result of the settlement of a damage suit, in which appellant acted as attorney for her and her husband and for which services he was paid a fee, she received certain funds; that it was agreed between them that it would be wise for her to invest this money in the purchase of a home. There then follows a long and involved series of events that culminated in her purchase of a home.

She had first signed a contract to purchase this home through a licensed real-estate broker; on appellant's advice this transaction was not consummated. Contemporaneously with Mrs. Tonkins' refusal to go through with that contract, appellant took over the matter of negotiating a new purchase contract for the same property; he guided her in making a new offer, conferred with the owner of the property on the questions of price and terms, attempted to secure second trust financing and drew up a new contract for a cash purchase at a lower price than was provided for in the first agreement. In this contract he designated the Senate Realty Corporation as purchaser and made a $1,000 cash deposit to bind the bargain.[1] This contract was accepted by the owner and a settlement date arranged at the title company. On the day of settlement appellant appeared at the title company and advised the owner that he had not been able to secure the financing required to settle on a cash basis as called for by the contract; the owner then agreed to sell at the original price of $15,950, which required him to take back a deferred purchase money trust for the sale over and above an existing first trust and a cash payment of $1,500.[2] This deal was then closed, the property deeded to Mrs. Tonkins and her sister, and, in the presence of appellant and the owner, the seller's settlement sheet was prepared at the title company providing for a commission of $600 to be paid to appellant. Appellant's name was erased and the name of Senate Realty Corporation was substituted. The $600 commission was not disbursed by the title company at that time.

Thereafter the licensed broker sued appellant, his clients, the owner and Senate Realty Corporation on the theory that he was entitled to the $600 commission because he had procured Mrs. Tonkins as purchaser under the first contract; that the owner had refused to pay him the commission and that all of the defendants in that suit had combined to interfere in his contractual relations with the owner in the matter of the commission; he claimed compensatory damages for the $600 commission and in addition punitive damages. This case never came to trial but was compromised. The Praecipe settling the case read: "Plaintiff [the broker] to receive $400.00 from * * * Title Co.; defendant Wagman [the appellant] to receive $200.00 from the * * * Title Co. * * *. Defendant Ehrlich [the owner] agrees to authorize * * * Title Co. to make disbursement on above basis." It was signed by appellant, the attorneys for the owner and the broker and approved by the judge.

There is much more detail in the transcript of testimony but we feel that the summary we have given is sufficient to justify the conclusion that the acts of appellant in connection with these real-estate transactions were of the same character as are normally performed by real-estate brokers in the usual conduct of their business and would appear to be the type of

1. Appellant was the only active officer of the Corporation and inasmuch as he was really making the offer for Mrs. Tonkins and made the cash deposit out of funds in his possession belonging to her, it is a proper conclusion to draw that he was using the Corporation as a "straw."

2. After making the $1,000 deposit out of funds belonging to Mrs. Tonkins, there remained in his hands belonging to her $500; he used this $500 to add to the $1,000 deposit thus making up a total cash payment of $1,500.

activities set forth in the statute which can only be lawfully performed by a licensed real-estate broker.

For example, Code 1951, § 45–1402, paragraph 1, defines a real-estate broker as one who, for another and for a commission, or who, with the intention or in the expectation of receiving a commission, purchases or offers or attempts or agrees to negotiate the purchase of an estate or interest in real estate, or negotiates or offers or attempts to negotiate a loan to be secured by a deed of trust upon real estate. 45–1402, paragraph 5, provides that "one act" included within any of the categories described in 1402, paragraph 1, shall constitute the person performing such act a "real-estate broker."

It is true of course that 1402, paragraph 7, provides that the provisions of the Act "shall not apply to * * * attorneys at law *in the ordinary practice of their profession* * * *." (Emphasis supplied.) And while the record at times is difficult to follow it would seem that the real position of counsel for appellant is that he concedes his client performed the acts we have attempted to summarize, but that in performing them he was acting as an attorney "in the ordinary practice of [his] profession" and therefore exempt from the necessity of securing a license.

Appellant in his testimony attempts to characterize all of his activities as those of a lawyer representing a client. While his testimony, if taken at face value, might have persuaded the jury of his innocence, there was substantial evidence to contradict his version. For example, while it is denied by appellant, the licensed broker who had negotiated the first contract, testified that after appellant's client had signed his contract, appellant phoned him at the owner's office and said, "What are you going to do about the commission?" When asked to explain his inquiry it developed that ap-

pellant had also procured an offer by Mrs. Tonkins to purchase the same property. When the broker, in view of the two offers for the same property, suggested that they consult with the owner concerning the matter, the appellant said, "That is beside the point. * * * The main thing is the commission. What are you going to do about the commission? * * * I am holding Mrs. Tonkins' money. * * * I can stop the show. * * * [W]e will have to do something about dividing the commission." And when asked for his suggestion appellant replied, "fifty-fifty."

When the final deal was closed at the title company appellant agreed to the setting aside of a commission of $600 payable to his corporate straw, and when that amount was finally disbursed he accepted $200 knowing its source. At the trial he gave an innocent explanation of his receipt of the $200 item, but the jury, of course, was not compelled to accept his version of either that phase of the case or his other testimony concerning the essential features of his various transactions. We feel therefore that whether he was acting as a broker or as an attorney was a question of fact to be determined by the jury and that the conflict in the evidence warranted its submission to the jury.

This brings us to appellant's contention that the court erred in denying several of his proffered instructions and in its general charge to the jury. We disagree. Assuming that the instructions offered on behalf of appellant correctly stated the law, which we do not decide, it is our holding that the instructions of the trial judge adequately and fairly covered every aspect of the case. This being so, the denial of the proffered instructions was not error.[3]

We do not regard it necessary to discuss the other assignments of error.

Affirmed.

3. Coleman v. Chudnow, D.C.Mun.App., 35 A.2d 925. See also our discussion of the various provisions of Code 1951, § 45–1401 et seq., in Draisner v. District of Columbia, D.C.Mun.App., 131 A.2d 297 and Eberman v. Massachusetts Bonding & Insurance Company, D.C.Mun. App., 41 A.2d 844.