RDP DEVELOPMENT
CORP., Appellant,

v.

Peter N.G. SCHWARTZ, Appellee.

No. 93–CV–601.

District of Columbia Court of Appeals.

Argued Oct. 26, 1994.

Decided April 20, 1995.

---

Geoffrey P. Gitner, Washington, DC, for appellant.

Neil I. Levy, Washington, DC, for appellee.

Before SCHWELB and KING, Associate Judges, and KENNEDY, Associate Judge of the Superior Court of the District of Columbia.*

KENNEDY, Associate Judge of the Superior Court of the District of Columbia:

This appeal arises from an action for fraud and breach of contract between appellant, RDP Development Corporation ("RDP") and appellee, Peter N.G. Schwartz ("Schwartz"), the general partner of Judiciary Square Limited Partnership ("Partnership"). In its complaint, RDP alleged that it was due compensation for the services its president, R. Donahue Peebles ("Peebles"), provided to Schwartz in connection with Schwartz's efforts to lease one of the Partnership's properties to the District of Columbia. In the trial court, Schwartz moved for summary judgment, arguing that RDP's suit was barred by the District of Columbia Real Estate Licensure Act of 1982, D.C.Code §§ 45–1921 *et seq.* (1990), because Peebles performed services as a real estate broker although he was not licensed to do so. The

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1989).

trial court agreed and, accordingly, granted Schwartz's motion for summary judgment.[1] Finding no error, we affirm.

## I.

At all times relevant to this suit, the Partnership owned an office building known as One Judiciary Square. Beginning in the fall of 1989, the Partnership, through Schwartz, attempted to lease One Judiciary Square to the District of Columbia government. These negotiations ended abruptly on May 29, 1990, when the Mayor, Marion Barry, announced that the District had decided to lease space in another office building.

Shortly after this announcement, Peebles and Schwartz met to discuss the possibility of hiring Peebles to assist in the procurement of a lease of One Judiciary Square by the District. Thereafter, on June 8, 1990, Schwartz sent Peebles a letter of agreement offering to hire him in the following terms:

> In consideration of your personal full effort provided in good faith to our objective in the obtaining of a lease of One Judiciary Square ... [Schwartz] agrees to pay Don Peebles an amount equal to of [sic] one and three quarters percent (1.75%) of the face lease value for the lease term not to exceed ten (10) years.
>
> Payment shall only be due if your effort directly produces a lease....

After consulting with his attorney, Peebles modified the wording of the proposed letter of agreement because his attorney advised him that it appeared to be a brokerage contract which, because he was not licensed as a real estate broker, he could not enforce.[2] Peebles then offered his services in the following terms:

Re: Consulting Agreement For One Judiciary Square (401 4th Street, N.W., Washington, D.C.)

Dear Don:

This letter shall confirm our agreement pursuant to which RDP Development Corporation shall consult with [property owner] in regard to the identification of possible leasing requirements of the District of Columbia and the suitability of our One Judiciary Square Building to meet such requirements. In the event you advise us of a leasing requirement, and we subsequently enter into a lease or leases with the government of the District of Columbia or any agency or instrumentality thereof, we agree to pay you for your services an amount [commission stated]....

In response to this proposal, Schwartz again reworded the writing which came to memorialize the parties' agreement. This letter, again referring in its caption to a "consulting agreement," in pertinent part provides:

> This letter shall confirm our agreement pursuant to which RDP Development Corporation shall consult with (property owner) and contribute your good faith effort in regard to presenting our leasing proposal to the District of Columbia and you marketing the suitability of our One Judiciary Square Building to the District.
>
> In the event you assist us as above with the leasing requirement, and we subsequently enter into a lease or leases with the Government of the District of Columbia or any agency or instrumentality thereof, we agree to pay you [commission stated]....

---

1. Schwartz filed a counterclaim and a third party complaint against RDP and Peebles alleging civil conspiracy, breach of good faith and fair dealing, fraud, and abuse of process, all arising from the transaction that is the subject of RDP's complaint. The trial court granted Peebles' and RDP's motion for summary judgment with respect to these claims. While Schwartz has appealed this ruling, his attorney has stated that he will withdraw his appeal if this court affirms the trial court's ruling granting summary judgment with respect to RDP's claims. In view of our affirmance of the trial court's ruling granting Schwartz's motion for summary judgment,

Schwartz's appeal stands withdrawn and will not be considered.

2. Peebles' attorney, Stephen B. Huttler, testified at his deposition, "I told [Peebles] I was concerned that the services he was providing as characterized in the document drafted by Mr. Schwartz could be characterized as providing brokerage services or that it looked like a brokerage contract. I told him that in the District of Columbia, given that he did not have a brokerage license, if it were so characterized, it would not be enforceable."

This writing was signed by the parties on June 13, 1990.[3]

Pursuant to the Agreement, Peebles attempted to bring about the leasing of One Judiciary Square by the District of Columbia. His activities included advising Schwartz regarding how to best market One Judiciary Square and meeting with the Mayor and several members of the City Council in an effort to convince them of the benefits of leasing the property.

Eventually, in the fall of 1990, the Partnership entered into competitive bidding pursuant to the District's new property and space procurement program.[4] It offered to sell One Judiciary Square to the District and lease the land beneath it. On July 17, 1991, the Partnership's bid was approved by the City Council, and the contract was finalized on March 17, 1992. When RDP's demand for payment was rebuffed, it filed the suit which is the subject of this appeal.

## II.

■ Summary judgment shall be entered if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c). In reviewing the trial court's grant of summary judgment, we also apply this standard and review the record *de novo*. *Holland v. Hannan*, 456 A.2d 807, 814 (D.C.1983) (citations omitted). We must decide, therefore, whether Schwartz was entitled to judgment as a matter of law based upon the undisputed facts set forth above.

■ RDP contends that the trial court erred in concluding that it acted as a real estate broker in performance of its agreement with Schwartz. The resolution of RDP's contention requires this court, for the first time, to interpret provisions of the District of Columbia Real Estate Licensure Act of 1982, D.C.Code §§ 45–1921 *et seq.* (1990) (the "Act"). The Act was enacted "to revise the real estate licensure law to establish educational and other qualifications for real estate brokers, sales persons, and property managers; to provide increased protection to the public against incompetence, fraud, and deception in real estate transactions; [and] to establish a real estate guaranty fund...." Committee Report on Bill 4–230, § I at 2 (October 1982).

■ The Act defines a "real estate broker" as one who "for a fee, commission, or other value consideration, lists for sale, or sells, exchanges, purchases, rents or leases real property...." D.C.Code § 45–1922(12)(A). The Act prohibits persons who act as real estate brokers and who are not licensed as such from bringing actions to recover for their services. Section 1926(c) states that:

No person engaged in or conducting the business, or acting in the capacity of a real estate broker, real estate salesperson, or property manager within the District shall bring or maintain any action in the courts of the District for the collection of compensation for any services performed in that capacity, or for the enforcement of any contract relating to real estate or business without alleging that he or she was duly licensed under the chapter.

The trial court determined that Peebles had acted as a real estate broker because he had participated in negotiations on Schwartz's behalf in an effort to secure a

---

3. At oral argument, counsel for appellant stated that the parties' agreement had been modified orally. Since this contention was raised for the first time on appeal, and more precisely during oral argument, it will not be considered. "Appellate review is limited to matters appearing in the record before [this court], and we cannot base our review of errors upon statements of counsel which are unsupported by that record." *D.C. Transit Sys., Inc. v. Milton*, 250 A.2d 549, 550 (D.C.1969); *see also Cobb v. Standard Drug Co.*, 453 A.2d 110, 111–12 (D.C.1982).

4. This legislation has changed the procedures by which the District conducts its real estate leasing transactions. Pursuant to this legislation, the Mayor was prohibited from obligating or expending District funds or from performing any contract for the purchase of goods and services over $1,000,000.00, without City Council approval. Further, all leases and purchases of real property became subject to an open and competitive procurement process. District of Columbia Procurement Practices Act of 1985 Council Contract Approval Procedures Amendment Act of 1992, D.C.Code § 1–1181.5a (1992).

lease for One Judiciary Square.[5] The trial court noted that Peebles had met with various District officials with the intent to persuade and convince the District to occupy One Judiciary Square and had submitted suggestions and proposals to the District regarding the possible uses for and suitability of the building. The court concluded that this pattern of interaction between Peebles and the District constituted real estate brokerage activity. Consequently, because neither Peebles nor RDP possessed a real estate license, RDP's suit to recover a commission was statutorily barred.

RDP does not dispute any of the court's factual findings regarding Peebles' activity. However, it finds considerable fault with how its activities have been characterized, particularly the trial court's conclusion that Peebles had "negotiated" with District officials in an effort to secure a lease. RDP argues that it contracted to act as a "consultant," not a broker, and that Peebles' meetings with District officials were performed "in connection with RDP's consultancy." RDP contends that Peebles' role was not to negotiate with District officials, but "merely to bring the parties to a point where they [would] subsequently be inclined to negotiate."

RDP asserts that its position is supported by the Act's legislative history. It notes that while the licensing statute which the Act revised specifically included those who negotiate leases within its definition of "real estate broker," the Act, by its terms, does not. In the former licensing statute, the term "real estate broker" was defined to include any person or entity "who, for another and for a fee ... lists for sale, sells, exchanges, purchases, rents or leases, or offers or attempts or agrees to *negotiate* a sale, exchange, purchase, lease, or rental of an estate or interest in real estate...." Real Estate and Business Brokers' License Act of the District of Columbia, D.C.Code § 1402 (1961) (emphasis supplied). RDP contends that the omission of any reference to the

"negotiation" of leases in the Act's definition of real estate broker renders the Act narrower in its reach than the former licensing statute.

Building upon the premise that the former licensing statute was broader in its reach than the Act, RDP finds significance in several court decisions which have applied the former statute. *Wagman v. District of Columbia*, 148 A.2d 308, 309 (D.C.1959); *Underwriters Constr. Co. v. District of Columbia*, 170 A.2d 236, 237 (D.C.1961); *Draisner v. District of Columbia*, 131 A.2d 297, 298 (D.C.1957); *Wickersham v. Harris*, 313 F.2d 468, 471 (10th Cir.1963). RDP contends that in these cases the proscription against unlicensed brokerage activity was held to apply only when the services provided included actual participation in the negotiation of the terms of a contract or lease. RDP reasons that since the former licensing statute was broader than the Act and was applied in circumstances where there was actual participation in the negotiation of the terms of a sale or lease of real estate, the Act does not reach Peebles' conduct since it was preliminary to negotiations between Schwartz and the District regarding the actual terms of a lease.

RDP's analysis cannot withstand scrutiny. At the outset, the premise that the Act is narrower in its reach than the former licensing statute which it revised is patently incorrect. In setting forth the purpose and effect of the Act, The Report of the Committee on Public Services and Human Affairs specifically states that "[t]he bill *expands* the list of improper activities engaged in by real estate professionals which would be unlawful under the law and provides sanctions for these provisions, with the express intent of ensuring that fewer members of the public are injured by unscrupulous real estate professionals." Committee Report on Bill 4–230, § I at 2 (October 1982) (emphasis supplied). Thus, the Act was designed to be broader in its reach than the former licensing statute.

---

5. The trial court found the analysis of the District Court in *Kassatly v. Yazbeck*, 734 F.Supp. 13 (D.D.C.1990), to be persuasive. In *Kassatly*, the court characterized a real estate broker as an "intermediary or middleman whose function and duty is to bring together the buyer and seller or owner or lessee." *Id.* at 15. Distinguishing between a "finder" and a "broker," the court stated that if a person takes any part in "negotiations," then that person is a broker who must be licensed to collect a commission.

Moreover, aside from the Act's legislative history, the Act's comprehensive definition of the term "real estate broker" demonstrates that its reach was intended to be broad, covering the full range of activities pursued by those within the brokerage business, including the negotiation of real estate contracts.[6]

With respect to the court decisions cited by RDP which have applied the former licensing statute, they neither involve circumstances similar to those in this case nor hold that the negotiation of the actual terms of a sale or lease of real estate is the *sine qua non* for the former licensing statute's application. *Wagman, supra,* 148 A.2d at 308 (holding that in prosecution for violation of licensing statute, conflicting evidence as to whether defendant was acting as an unlicensed broker or an attorney was a question of fact for the jury); *Underwriters Constr. Co., supra,* 170 A.2d at 237–38 (affirming conviction for violation of licensing statute where trial court's denial of defendant's "Motion for a Bill of Particulars and to Correct or Dismiss the Information," its admission of certain items of evidence over objection, and its jury instructions were challenged, but found not erroneous); *Draisner, supra,* 131 A.2d at 298–99 (affirming conviction for violation of licensing statute where defendant, for a commission, acted as a broker by negotiating a sale of real estate on behalf of himself and others and thus was required to be licensed as a real estate broker under the terms of the statute); *Wickersham, supra,* 313 F.2d at 471–72 (reversing judgment for plaintiff in action to recover compensation for services rendered in connection with the ef-

fectuation of a contract for the sale of land reversed where, contrary to trial court's finding that plaintiff was a "finder," plaintiff held to be an unlicensed real estate broker since he had authority to procure a prospective purchaser).

It is difficult to understand how any of the cases cited by RDP support its position. To the contrary, this jurisdiction's case law is replete with instances where a broker's right to a commission has been upheld without the broker's participation in the negotiation of the terms of a contract, including the whole category of cases involving brokers with exclusive listing contracts who receive commissions when a second broker, working independently, secures a willing buyer or lessee. *E.g., Bowles v. Hagans,* 256 A.2d 407 (D.C. 1969) (finding broker entitled to commission on sale of boat to buyer he procured following negotiations between owner and buyer); *Moran v. Audette,* 217 A.2d 653 (D.C.1966) (deciding broker entitled to commission where owner takes over negotiations); *Dunn v. Cox,* 163 A.2d 609 (D.C.1960) (holding broker with exclusive listing entitled to commission on sale of realty by a second broker); *see also Riskin v. Baltimore & O.R.R.,* 234 F.Supp. 979, 981 (D.D.C.1964) (stating "a broker is entitled to commission where he has brought the parties together, even though he is precluded from the remaining negotiations"). We agree with the trial court that the undisputed facts show that RDP acted as a real estate broker.

■ We reject RDP's restrictive reading of the Act, particularly the distinction it would have us draw between negotiation and conduct preliminary to negotiation, as artifi-

---

**6.** D.C.Code § 45–1922(12) defines the term "real estate broker" as any person, firm, association, partnership, or corporation (domestic or foreign) which:

(A) For a fee, commission, or other valuable consideration, lists for sale, or sells, exchanges, purchases, rents, or leases real property. A real estate broker may collect or offer to collect rent or income for the use of real estate, or negotiate a loan secured by a mortgage, deed of trust, or other encumbrance upon the transfer of real estate. A real estate broker may also engage in the business of erecting housing for sale and may sell or offer to sell that housing, or who as owner may sell or, through solicitation or advertising, offer to sell or nego-

tiate the sale of any lot in any subdivision of land comprising 5 lots or more. This definition shall not apply to the sale of space for the advertising of real estate in any newspaper, magazine, or other publication; and

(B) May employ real estate brokers, associate real estate brokers, real estate salespersons, property managers and residential managers. The real estate broker shall be held accountable for the day-to-day job-related activities of his or her employees. These activities include, but are not limited to, property management, leasing or renting of property, listing for sale, buying or negotiating the purchase or sale, or exchanging real estate or negotiating a loan on real property.

cial and incompatible with the broad protective purposes of the Act's licensure requirements. Moreover, the fact that RDP's compensation under the contract was to be paid on a commission basis contingent upon success in the leasing of real property, with the amount tied directly to the value of the lease, an element common to real estate brokerage contracts, underscores the conclusion that RDP contracted to perform and acted as a real estate broker.

### III.

 RDP also argues that the trial court erred in finding that its suit was barred since the Act was not intended to apply to commercial real estate transactions involving knowledgeable and sophisticated parties who are capable of protecting themselves. RDP asserts further that the trial court's ruling is "at odds with modern business reality which frequently involves the participation of consultants in business transactions." Nothing in the language of the Act or its legislative history supports RDP's position. Schwartz is clearly within the class the Act was designed to protect. The Act is designed to chill unlicensed practice by denying transgressors any recovery regardless of the services they provide or the status of their client. Given the broad remedial objectives of the Act, we construe it generously and will not create an exception to the legislative mandate which would exempt from the Act's coverage the most lucrative area of brokerage practice. *See, e.g., EDM & Assocs. v. GEM Cellular,* 597 A.2d 384, 387 (D.C.1991) (citing *Tenants of 738 Longfellow St., N.W. v.*

*District of Columbia Rental Hous. Comm'n,* 575 A.2d 1205, 1211 (D.C.1990)) (holding that a remedial statute must be accorded generous construction to achieve its purposes).

We, therefore, hold that the agreement between RDP and Schwartz and Peebles' conduct, pursuant to the agreement, came within the scope of the Act. Consequently, since neither RDP nor Peebles possess a license, this action is barred.[7] Accordingly, the judgment of the trial court is

*Affirmed.*

---

7. RDP's other contentions of error may be summarily rejected. RDP argues that there are material issues of fact regarding the parties' intention to make the contract severable. RDP claims that even if a portion of its contract is unenforceable, it should be compensated for its non-brokerage activity. The parties' intention to make a contract severable must be clearly expressed in the agreement. *Howard University v. Durham,* 408 A.2d 1216 (D.C.1979); *see also* RESTATEMENT (2ND) CONTRACTS, § 240. Courts that have barred recovery for services prohibited by licensure acts have permitted recovery for other services not covered by such acts only where the structure of the contract demonstrated the parties' intent to do so. *See, e.g., Holiday Homes v. Briley,* 122 A.2d 229 (D.C.1956); *Food Management, Inc. v.*

*Blue Ribbon Beef Pack., Inc.,* 413 F.2d 716 (8th Cir.1969). The parties' agreement contains no such expression. Indeed, payment was expressly conditioned upon the execution of a lease.

RDP also claims that the trial court erred in granting summary judgment with respect to its claim for fraud. RDP's claim for fraud, and the damages which it seeks under this claim, arise from the same circumstances which underlie its claim for breach of contract. The Act could not be more clear on this issue. It bars *"any action* in the courts of the District for the collection of compensation for any services performed in that [real estate broker] capacity." D.C.Code § 45–1926(c) (emphasis supplied). RDP will not be permitted to recover by the simple expedient of labeling its claim "fraud."