*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-CV-0695

THE CORCORAN GALLERY OF ART AND THE TRUSTEES OF THE CORCORAN GALLERY OF ART, APPELLANTS,

V.

SUSANNE JILL PETTY, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2019-CA-008131-F)

(Hon. Shana Frost Matini, Trial Judge)

(Argued October 20, 2022      Decided March 23, 2023)

*Charles A. Patrizia*, with whom *Stephen B. Kinnaird* and *David S. Julyan* were on the brief, for appellants.

*Hannah Wigger*, with whom *Jim Burgess*, *Paul Werner*, and *Calla Simeone*, were on the brief, for appellee.

Before DEAHL and ALIKHAN, *Associate Judges*, and GLICKMAN, *Senior Judge*.[*]

---

[*] Judge Glickman was an Associate Judge of the court at the time of argument. He began his service as a Senior Judge on December 21, 2022.

DEAHL, *Associate Judge*:  The Constitution's Full Faith and Credit Clause generally obliges the District of Columbia courts to give conclusive effect to judgments issued by other states' courts.  U.S. Const. art IV, § 1.  That is not an inexorable command, however, and we "may inquire into the jurisdictional basis of the foreign court's decree."  *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 705 (1982).  Except, that is, where the jurisdictional issues were themselves "fully and fairly litigated and finally determined" in the foreign court, in which case we owe those jurisdictional determinations full faith and credit as well.  *Id.* at 714.

This case presents an interesting twist on those well-established principles.  A California trial court issued a judgment with some reason to doubt, and without any apparent consideration of, its jurisdiction to do so.  The District's courts have now been asked to enforce that judgment.  If that judgment were standing alone, our courts would be free to scrutinize whether the California trial court had jurisdiction to issue its judgment, as appellant, the Corcoran Gallery of Art, now asks us to do.  But the twist is that the Corcoran appealed the California trial court's judgment to the California Court of Appeal, where it litigated its jurisdictional challenges, and the California Court of Appeal squarely rejected them.  The issue before us is thus whether that appellate court decision precludes us from scrutinizing the trial court's

exercise of jurisdiction in the first instance. Put another way, we must decide whether the full faith and credit analysis encompasses the appellate court's affirmance of the trial court's judgment. The D.C. Superior Court answered in the affirmative, in the order now on appeal, and concluded that the California Court of Appeal had conclusively rejected the Corcoran's jurisdictional challenges. The Corcoran disagrees, and urges us to reject the Superior Court's reasoning and to consider its jurisdictional challenges anew.

We agree with the D.C. Superior Court and conclude that we owe full faith and credit to the California Court of Appeal's decision rejecting the Corcoran's jurisdictional challenges. Where another state's appellate court has already considered a jurisdictional challenge to an underlying judgment, that consideration effectively inheres in the judgment itself, and we will not second-guess it. Because the jurisdictional challenges raised in this appeal were already fully and fairly litigated before the California Court of Appeal, we will not reconsider them now. We affirm the Superior Court's judgment.

**I.**

*Cy Pres Proceedings*

The Corcoran was a private art gallery in Washington, D.C., founded in 1869. In 1994, the Corcoran entered into an agreement with the Alice C. Tyler Art Trust, established by a philanthropist of that name.  The Trust agreed to gift the Corcoran a collection of artwork by the artist Suzanne Regan Pascal, plus $1 million to maintain the collection, with the gift contingent on the Corcoran exhibiting the collection for at least two months per year and keeping at least one piece of artwork from the collection on display at all times.  The Corcoran complied with those conditions until 2014.

In 2014, the Corcoran decided to close its gallery after years of financial struggles.  The Corcoran trustees sought a cy pres order from the D.C. Superior Court to have the Corcoran's assets redistributed in a way that would align as much as possible with the intent of its founder.  *See* D.C. Code § 19-1304.13.  The Tyler Trust did not participate in the cy pres proceedings.  The Superior Court issued a cy pres order, under which the National Gallery of Art could take or help redistribute the Corcoran's art collection.  The agreement provided that "the Corcoran Deed of Trust and any other applicable instrument [wa]s deemed to be revised to the extent

necessary to permit the [Corcoran] Trustees to enter into" their agreement with the National Gallery.

Under the agreement, the National Gallery could choose whether to accession—meaning, take into its collection—each piece of art from the Corcoran collection. If it chose not to accession a piece, the National Gallery would work with the Corcoran trustees to identify museums or institutions within the District—or, as a last resort, outside the District—that could take the works. The agreement also provided that no artwork covered by the order could be removed from the District without permission of the Attorney General of the District of Columbia. The National Gallery decided not to accession the Pascal collection. While the Corcoran and National Gallery were deciding how to distribute it, the Pascal collection was kept in storage.

*California Probate Court*

In 2018, Susanne Jill Petty, as trustee of the Alice C. Tyler trust, sued the Corcoran in the probate division of the California Superior Court for failing to abide by the terms of its agreement with the trust. She filed a petition seeking the return of the Pascal collection and the $1 million cash gift. The court held an initial hearing at which an attorney for the Corcoran appeared and Petty asked for an extension of

time to properly serve her petition on the Corcoran. The Corcoran did not object to the extension, and it indicated that it wanted the additional time to file its objections in any event. A few weeks later, and five days before the next hearing was scheduled to take place, the probate court added a note to the case's "probate notes"—notes about the case that the parties can view on the court's website—pointing out deficiencies in Petty's service of the petition. *See* L.A. Cnty. Super. Ct. R. 4.4. The probate court's local rules state that any outstanding matters in the probate notes must be cleared two court days before a hearing. L.A. Cnty. Super. Ct. R. 4.4(b). The local rules also give the probate court discretion as to whether to waive its rules in any given case. L.A. Cnty. Super. Ct. R. 4.2.

Petty responded to the note just one court day before the hearing, stating that, even if she had not timely served process on the Corcoran, it had actual notice of the hearing because its attorney had been present when the hearing was scheduled. At the hearing three days later (there was an intervening weekend), no representative for the Corcoran appeared. The probate court indicated that it would enter a default judgment against the Corcoran, stating: "With no appearance by [the Corcoran], and I'm finding that notice is proper, and I'm clearing the notes in total on this matter. The court is going to grant the petition as requested." The probate court ordered the

Corcoran to return the Pascal collection and the $1 million cash gift to the Tyler trust.  Petty was later awarded costs of $1,365.94 and attorneys' fees of $58,353.62.

The Corcoran filed a motion for reconsideration, claiming both that the probate court lacked jurisdiction to issue the order and that its order conflicted with the D.C. Superior Court's cy pres order.  The Corcoran argued that it had "never submitted to [the probate c]ourt's jurisdiction" and had not been timely served with process.  It also argued that Petty had not timely responded to the probate notes.  On the merits, the Corcoran argued that it could not comply with the probate court's order to move the collection to California without violating the cy pres order, because, under the Corcoran's agreement with the National Gallery, the collection could not be removed from the District of Columbia without the permission of the Attorney General.

Several days later, with no indication that it saw the motion for reconsideration, the probate court entered judgment, ordering the Corcoran to return the artwork and cash gift.  After the probate court entered judgment, Petty filed an opposition to the Corcoran's motion for reconsideration.  She argued that, now that the probate court had entered judgment, it was no longer able to reconsider its order.  The Corcoran filed a reply, insisting that the probate court had erred in entering

judgment without considering its motion. The probate court never ruled on the Corcoran's motion.

*California Court of Appeal*

The Corcoran appealed to the California Court of Appeal, which affirmed the probate court's judgment in a comprehensive unpublished opinion. *See Petty v. Corcoran Gallery of Art*, No. B293796, 2020 WL 4877542, at *1 (Cal. Ct. App. Aug. 20, 2020). The Court of Appeal held that the Corcoran's motion for reconsideration was improper because the Corcoran had raised no new facts, circumstances, or law that could provide a basis for the probate court to reconsider its decision. *Id.* at *8-9. Even if the motion were considered, the court held, it lacked merit. First, the court rejected the Corcoran's argument that the probate court lacked jurisdiction over it. *Id.* at *9. Under California law, a party who makes a "general appearance" in court has "relinquished all objections based on lack of personal jurisdiction or defective process or service of process." *Id.* at *11 (quoting *In re Marriage of Obrecht*, 199 Cal. Rptr. 3d 438, 443 (Cal. Ct. App. 2016)). A party makes a general appearance when it "takes part in the action or in some manner recognizes the authority of the court to proceed." *Obrecht*, 199 Cal. Rptr. 3d at 443 (citation omitted). This includes making an appearance for anything other than "the

*sole* purpose of objecting to the court's jurisdiction." *Petty*, 2020 WL 4877542, at *10 (emphasis added) (quoting *Obrecht*, 199 Cal. Rptr. 3d at 444). The Corcoran made merits arguments in its motion for reconsideration and so, the Court of Appeal held, it made a general appearance in the probate court, waiving any objection to that court's exercise of personal jurisdiction or to Petty's service of process. *Id.* at *11. In addition, the court held that the probate court had properly exercised its discretion in waiving the rule requiring timely clearance of the probate notes. *Id.* at *12-13.

And even if the Corcoran had properly raised its merits argument, the Court of Appeal held, the probate court's judgment did not conflict with the cy pres order. *Id.* at *13-14. In its view, the Corcoran had failed to show that its agreement with the Tyler Trust was an "applicable instrument" that needed modification so that the Corcoran could enter into its agreement with the National Gallery. To the contrary, the "Corcoran transferred the art works to the National Gallery for accession or distribution," and did so "without implicating the [Tyler Trust] agreement." *Id.* at *14. Moreover, the Court of Appeal observed that the opinion accompanying the cy pres order had explicitly stated that "any existing donor restrictions that [we]re applicable to the particular assets [held by the Corcoran] w[ould] remain in place." *Id.* The Tyler Trust agreement provided one such restriction. Therefore, the Court

of Appeal held, the cy pres order did not preclude the Corcoran from sending the Pascal collection to California, as directed by the probate court. *Id.* Following this appeal, Petty was awarded an additional $1,163.80 in costs and $140,999.50 in attorneys' fees.

*D.C. Superior Court*

While the Corcoran's appeal was pending in the California Court of Appeal, Petty filed a request to enforce the probate court's judgment in the District of Columbia—where the Corcoran's assets, including the Pascal collection, were located—so that she could enforce it here. *See* Super. Ct. Civ. R. 62-III(a). The Corcoran responded by filing a motion for relief from enforcement of a foreign judgment, arguing that the Superior Court should not enforce the California judgment for the same reasons it had advanced before the California Court of Appeal: the probate court lacked jurisdiction over it and enforcing the probate order would violate the cy pres order.

The court denied the Corcoran's motion. The court found that, putting aside whether or not the Corcoran had made a general appearance before the California probate court, it had submitted to the jurisdiction of the California Court of Appeal and so "the California decisions are entitled to full faith and credit." While that alone

was sufficient to decide the case, the court also explained, "in the interest of thoroughness," that it agreed with the California Court of Appeal that the cy pres order did not cover the Pascal collection and so did not preclude compliance with the probate court's order. The court therefore denied the Corcoran's motion for relief. The Corcoran now appeals to this court.

## II.

On appeal, the Corcoran reasserts the same jurisdictional argument it made before the California Court of Appeal and the D.C. Superior Court: that the probate court's order should not be enforced because that court lacked jurisdiction over the Corcoran.[1] Underlying that argument—and necessary for the Corcoran to prevail— is the premise that we are free to reconsider that question despite the fact that the

---

[1] The Corcoran also argues that the California courts themselves violated their full faith and credit obligations by issuing and upholding a judgment that—in the Corcoran's view—conflicted with the D.C. Superior Court's cy pres order. We reject this argument. The Full Faith and Credit Clause is implicated only when an issue has already been "fully and fairly litigated and finally decided," as the Corcoran notes numerous times. *Durfee v. Duke*, 375 U.S. 106, 111 (1963). The Corcoran does not point to any D.C. case in which it has litigated—or in which a court has decided—whether the cy pres order covers the Pascal collection. Neither the cy pres order itself, nor the attached memorandum, make any mention of the Pascal collection. The California courts were therefore the first to address this issue; there was no prior decision to which they could have given full faith and credit.

California Court of Appeal has already answered it. The Corcoran argues that we have an obligation to consider anew the probate court's jurisdiction because "a court asked to enforce a default judgment must entertain an attack on the jurisdiction of the court that issued the judgment." *Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014). The California Court of Appeal's rejection of its jurisdictional challenges does not affect our obligation to consider them, in the Corcoran's view, as it asserts that we only give full faith and credit to the court that entered the judgment: here, the California probate court. We disagree.

Article IV, section 1 of the Constitution provides that "Full Faith and Credit shall be given in each State to the . . . judicial Proceedings of every other State." The California Court of Appeal's decision is unquestionably part of California's judicial proceedings in this matter, and we cannot ignore it in carrying out our obligations to give full faith and credit to those proceedings. The California Court of Appeal considered the jurisdictional challenge to the probate court's order that the Corcoran now raises before us, and it held that the probate court had properly exercised jurisdiction over the Corcoran. *See Petty*, 2020 WL 4877542, at *9-14. Our obligations under the Full Faith and Credit Clause preclude us from second-guessing that determination, for reasons expanded upon below.

**A.**

The District's courts are required to give full faith and credit to the "judicial Proceedings" of other states. U.S. Const. art. IV, § 1; *see J.J. v. B.A.*, 68 A.3d 721, 726 (D.C. 2013) ("Although the District of Columbia is not a state, the Full Faith and Credit Clause is also applicable to the District."). As the Supreme Court has explained:

> The constitutional command of full faith and credit, as implemented by Congress, requires that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." Full faith and credit thus generally requires every State to give to a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it.

*Durfee v. Duke*, 375 U.S. 106, 109 (1963) (quoting 28 U.S.C. § 1738). "For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force." *Baker ex rel. Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998) (footnote omitted).

But decisions of other states' courts are owed full faith and credit "only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment." *Durfee*, 375 U.S. at 110. If the rendering court finds that it

did have jurisdiction to enter the judgment, then that determination is itself entitled to full faith and credit. *Id.* at 111 ("[A] judgment is entitled to full faith and credit— even as to questions of jurisdiction."); *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) (same). In *Durfee v. Duke*, the Supreme Court cited a number of cases in which "the claim was made that a court, when asked to enforce the judgment of another forum, was free to retry the question of that forum's jurisdiction over the subject matter." 375 U.S. at 112. In each case, the Supreme Court had rejected the argument, holding "that since the question of subject-matter jurisdiction had been fully litigated in the original forum, the issue could not be retried in a subsequent action between the parties." *Id.*

The crux of this case comes down to whether the question of the probate court's jurisdiction has already been "fully litigated in the original forum," such that it cannot be relitigated before us now. *Id.* The Corcoran answers that question in the negative, arguing that our court and the Supreme Court have said that full faith and credit is owed only where issues "have been fully and fairly litigated and finally decided *in the court which rendered the original judgment*." *Wilburn v. Wilburn*, 210 A.2d 832, 834 (D.C. 1965) (emphasis added) (quoting *Durfee*, 375 U.S. at 111). In other words, the Corcoran argues, the only relevant decision maker that we need

to pay attention to is the probate court itself. We find that to be an overly constrained view of our obligations under the Full Faith and Credit Clause.

As an initial matter, the cases the Corcoran cites simply do not address the nuance we confront today, where an appellate court in the originating jurisdiction already resolved a challenge to the underlying judgment. And "[t]he rule of stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." *Murphy v. McCloud*, 650 A.2d 202, 205 (D.C. 1994) (citation omitted). We will not strip proclamations about judgment-issuing courts from their context and apply them to this new scenario where they are entirely inapt. The same is true of the statement that "a court asked to enforce a default judgment must entertain an attack on the jurisdiction of the court that issued the judgment"—that statement was made in a context in which *no court* had resolved the jurisdictional question. *See Jerez*, 775 F.3d at 422. Suffice it to say that we have never suggested that we may ignore the authoritative rulings of other states' appellate courts when they have already resolved a challenge to an underlying judgment, and we are not aware of any other court that has done so either (the Corcoran points to none).[2] And the one case we

---

[2] A superficially similar—but ultimately very different—issue was presented in *Ahmad Hamad Al Gosaibi & Bros. v. Standard Chartered Bank*, 98 A.3d 998

have found that directly addressed whether to give full faith and credit to an appellate decision agreed that this was appropriate because both "the [] trial court judgment confirming the award *and the intermediate appellate decision affirming that judgment* are 'judicial proceedings' within the meaning of the Full Faith and Credit Clause." *N. Ind. Commuter Transp. Dist. v. Chicago SouthShore & S. Bend R.R.*, 685 N.E.2d 680, 686 (Ind. 1997) (emphasis added).

Indeed, the Supreme Court has implied that decisions of other states' appellate courts should play a role in the full faith and credit analysis. In *Durfee*, the Supreme Court considered a suit for quiet title that had first been brought in Nebraska and then, by the losing party, in federal court in Missouri. 375 U.S. at 108. The parties

---

(D.C. 2014). At issue in that case was a foreign judgment issued in Bahrain—we do not owe full faith and credit to foreign judgments—though that Bahraini judgment had been recognized and given effect in the New York courts as a "matter of comity." *Id.* at 1007. The Pennsylvania courts, in turn, decided that they owed New York's judgment full faith and credit. *Id.* at 1002-04. We disagreed and did not give effect to the New York judgment, concluding that a judgment that "need not be based on the rendering court's personal jurisdiction over the parties" was not the "kind of judgment" to which we owe full faith and credit (even if Pennsylvania thought it was). *Id.* at 1006-07. In other words, New York's decision to give effect to a Bahraini judgment as a matter of comity was not the type of judgment to which we owed full faith and credit. Here, on the other hand, no one disputes that the probate court's judgment is the kind of judgment that we owe full faith and credit to. The dispute is purely over whether the Corcoran can relitigate the jurisdictional issue after an appellate court resolved it—something that did not come up in *Ahmad Hamad*.

had fully litigated a jurisdictional issue in the Nebraska trial court, which determined that it had jurisdiction, and the Nebraska supreme court upheld that determination. *Id.* The *Durfee* Court concluded that the federal court in Missouri had "the duty to inquire into the jurisdiction of the Nebraska *courts*" and that "the jurisdictional issues had been . . . finally determined in the Nebraska *courts*." *Id.* at 116 (emphases added). In other words, the Court appeared to consider the Nebraska court system as a whole, not just the Nebraska trial court. Supporting this approach, the Supreme Court has elsewhere noted in passing that the "Full Faith and Credit Clause and its implementing statute speak not of 'judgments' but of 'judicial proceedings' without limitation." *Baker*, 522 U.S. at 235 (quoting *Barber v. Barber*, 323 U.S. 77, 87 (1944) (Jackson, J., concurring)).

Considering appellate decisions as part of the judicial proceedings to which we owe full faith and credit makes sense. Our obligations under the full faith and credit clause are articulated in terms of a judgment's preclusive effect in its originating state. *See Durfee*, 375 U.S. at 109 ("Full faith and credit [] generally requires every State to give to a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it."). And a judgment's preclusive effect is inherently tied up with the resolution of an appeal from that judgment. If the judgment is reversed, it no longer has preclusive effect. *See* 18A

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Jurisdiction* § 4427 (3d ed., 2022) ("Should the judgment be vacated by the trial court or reversed on appeal, [] res judicata falls with the judgment."). If it is affirmed, only the parts of the judgment affirmed on appeal are entitled to preclusive effect; anything the appellate court considered but did not decide is not preclusive. *See Samara v. Matar*, 419 P.3d 924, 929-31 (Cal. 2018) (citing the Restatements First and Second of Judgments and collecting cases); *see also* Wright & Miller, supra, at § 4421 ("The federal decisions agree with the Restatement view that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision."). That means it is impossible to consider the preclusive effect of a judgment without considering whether, and the grounds on which, it was affirmed on appeal. Here, those grounds include an affirmance of the probate court's jurisdiction.[3]

---

[3] Ignoring the Court of Appeal's decision would be especially anomalous here, where the question the Corcoran asks us to resolve de novo is a question of California law. The California Court of Appeal is an expert in California law. We are not. When attempting to resolve a question governed by the law of another state, we "look to the decisions of that state." *Young v. State Farm Mut. Auto. Ins. Co.*, 213 A.2d 890, 892 (D.C. 1965). So, if we were to decide de novo whether the probate court had jurisdiction under California law, we would look to cases decided by California courts—including the very Court of Appeal decision in this case.

This conclusion also aligns with the purpose of the Full Faith and Credit Clause. That Clause was intended to avoid the "risk," inherent in our federal system, "that two or more States will exercise their power over the same case or controversy, with the uncertainty, confusion, and delay that necessarily accompany relitigation of the same issue." *Underwriters Nat. Assur. Co.*, 455 U.S. at 705. Those risks are not confined to disputes among courts of first instance. Giving full faith and credit to a judgment, without considering an appellate decision affirming that judgment, would result in intractable inconsistencies of the type the Full Faith and Credit Clause sought to avoid. Imagine if the Corcoran had assets in, or had disbursed works within the Pascal collection across, all fifty states. Under its view, the courts in each state would be left to determine for themselves whether the California probate court properly exercised jurisdiction, and there would be no final arbiter over that question. That would result in a highly ineffective spate of relitigation and potentially inconsistent interpretations of the same order in the exact manner the Full Faith and Credit Clause was meant to protect against. Not including the California Court of Appeal's jurisdictional determination in the full faith and credit analysis would thus likely "result[] in two state courts reaching mutually inconsistent judgments on the same issue," which is "precisely the situation the Full Faith and Credit Clause was designed to prevent." *Id.* at 715.

Ultimately, this case boils down to whether the Corcoran should have another opportunity to litigate a claim it has already lost. The options open to a defendant like the Corcoran were clearly laid out by then-Judge Ginsburg in a D.C. Circuit case:

> A defendant who knows of an action but believes the court lacks jurisdiction over his person or over the subject matter generally has an election. He may appear, raise the jurisdictional objection, and ultimately pursue it on direct appeal. *If he so elects, he may not renew the jurisdictional objection in a collateral attack.* Should he proceed this way, he may . . . press on direct review the jurisdictional objection, along with objections on the merits.

> Alternatively, the defendant may refrain from appearing, thereby exposing himself to the risk of a default judgment. When enforcement of the default judgment is attempted, however, he may assert his jurisdictional objection. If he prevails on the objection, the default judgment will be vacated.

*Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1547 (D.C. Cir. 1987) (emphasis added, citations omitted); *see also Jerez*, 775 A.3d at 422. In other words, a defendant can either litigate his jurisdictional objection in the original forum—including in the trial court and through any appeals—or in the forum in which the judgment is to be enforced. It is one or the other, not both.

The Corcoran picked the first route, was unsuccessful, and now tries to go down the second route. It may not do so. The Corcoran was "always free to ignore

the [California] judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding"—i.e., in the District. *Ins. Corp. of Ireland*, 456 U.S. at 706. Instead, it chose to challenge the probate court judgment in California: filing first a motion for reconsideration in the probate court and then an appeal to the California Court of Appeal. By choosing to litigate its jurisdictional objection in California, the Corcoran chose its forum. It "may not renew the jurisdictional objection in a collateral attack" here in the District. *Practical Concepts*, 811 F.2d at 1547.[4]

In sum, when the Corcoran submitted its challenges to the probate court's order to the California Court of Appeal, it chose its forum for resolving those challenges. It does not get another bite at the apple here.

---

[4] The Corcoran also seeks a second bite at the apple when it argues that any finding that the probate court had jurisdiction over it would violate constitutional due process because it did not consent to that court's jurisdiction. We are skeptical of this argument. "A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court," including "submit[ting] to the jurisdiction of the court by appearance"—which the California Court of Appeal held happened here. *Ins. Corp. of Ireland*, 456 U.S. at 703. "[T]he mere use of procedural rules [to determine jurisdiction] does not in itself violate the defendant's due process rights." *Id.* at 707. In any case, we need not decide the question because the Corcoran already had the opportunity to make its due process argument in the California Court of Appeal and "there is involved in [the Due Process Clause] no right to litigate the same question twice." *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 524 (1931).

**B.**

There is one potential outstanding issue, which is whether the challenges the Corcoran now raises were in fact fully and fairly litigated in the California Court of Appeal. Though "a state court's final judgment determining *its own* jurisdiction ordinarily qualifies for full faith and credit," it may not in those cases where the jurisdictional issue was not "fully and fairly litigated." *Marshall v. Marshall*, 547 U.S. 293, 314 (2006) (citing *Durfee*, 375 U.S. at 111). While we make clear today that the Full Faith and Credit Clause extends to decisions of other states' appellate courts when they resolve a challenge to an underlying judgment, those appellate decisions may also be challenged on the basis that the issues they resolved were not fully and fairly litigated—as in any other full faith and credit challenge.

The Corcoran did not raise that type of challenge to the California Court of Appeal's decision in its briefing before us, but it seemed to present one for the first time at oral argument. We are not obliged to address its late-breaking contention. *See Woodard v. United States,* 738 A.2d 254, 259 n.10 (D.C. 1999) (refusing to consider point raised for the first time at oral argument); *RDP Dev. Corp. v. Schwartz,* 657 A.2d 301, 304 n.3 (D.C. 1995) (same). Nonetheless, we exercise our discretion to do so, and conclude that it lacks merit.

At oral argument, the Corcoran argued that the record does not reflect whether it had been given the opportunity to fully and fairly litigate its case in the California Court of Appeal because there is no record of any briefing in that court before us here. We disagree and conclude that there is abundant evidence that the issues were fully and fairly litigated in the California Court of Appeal. First, recall that the Corcoran brought the appeal in California, so if it did not fully brief its jurisdictional challenges, that is a failure we would hold against it, not the Court of Appeal. Second, the briefs before the California Court of Appeal are publicly available court filings that we can take judicial notice of, and will do so here. *See In re Marshall*, 549 A.2d 311, 313 (D.C. 1988) (citing *Coleman v. Burnett*, 477 F.2d 1187, 1198 (D.C. Cir. 1973)) (acknowledging this court's "power to judicially notice proceedings in related cases"). The briefs before the California Court of Appeal, unsurprisingly, comprehensively articulated the Corcoran's jurisdictional arguments. *See, e.g.*, Brief for Appellant at 20-32, *Petty v. Corcoran Gallery of Art*, 2019 WL 956458 (Cal. Ct. App. Feb. 25, 2019). Third, the California Court of Appeal's opinion states in its jurisdictional analysis that it is responding to arguments made by the Corcoran and it even explicitly references briefing submitted to it by the parties. *See Petty*, 2020 WL 4877542, at *1, *11 n.15.

There is thus no cause to doubt that the Corcoran fully and fairly litigated its jurisdictional arguments before the California Court of Appeal, and the D.C. Superior Court was correct to give full faith and credit to that court's decision, which already resolved the issues the Corcoran seeks to relitigate before us.

## III.

We affirm.

*So ordered.*