# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 10, 2014      Decided December 30, 2014

No. 13-7141

NILO JEREZ,
APPELLANT

v.

REPUBLIC OF CUBA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-mc-00466)

*Richard J. Oparil* argued the cause and filed the briefs for appellant.

*Michael R. Krinsky* argued the cause for appellees. With him on the brief was *David B. Goldstein*.

Before: BROWN, *Circuit Judge*, and WILLIAMS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Nilo Jerez filed suit in Florida state court against the Republic of Cuba and various codefendants, including Fidel Castro and the "Cuban Revolutionary Armed Forces," alleging that he had suffered horrifying torture at their hands and continued to suffer the consequences. Having obtained a default judgment in state court, Jerez now seeks to execute that judgment on patents and trademarks held or managed by the appellees in this action, who are allegedly agents and instrumentalities of Cuba. Because the Florida state court lacked subject-matter jurisdiction to grant the default judgment, we affirm the district court's denial of Jerez's request.

\* \* \*

In the 1960s and 1970s, while incarcerated in Cuba, Nilo Jerez allegedly endured unlawful incarceration and torture committed by the Cuban government and its codefendants. The torture allegedly included such features as having electricity run through his body causing loss of bodily functions and consciousness and being forced to live surrounded by his own urine and feces. Readers familiar with *Against All Hope*, Armando Valladares's account of his incarceration by the same parties, will find much of Jerez's treatment similar to that inflicted on Valladares and depicted by him as having been extended to many of his fellow prisoners. In Jerez's case, he alleges, the defendants also purposefully injected him with the hepatitis C virus and subjected him to other conditions also causing hepatitis C, which has in turn caused him ongoing cirrhosis of the liver.

In 2005, years after arriving in the United States, Jerez sued the defendants for compensatory and punitive damages in Florida state court (specifically the Eleventh Judicial Circuit in and for Miami-Dade County, Florida). After the defendants failed to appear, the court found them liable under

3

the Torture Victim Protection Act and granted Jerez a default judgment for $200 million. Although Jerez's complaint alluded to the Foreign Sovereign Immunities Act ("FSIA"), he claimed jurisdiction under the Alien Tort Claim Act, and the court found jurisdiction on that basis.

To enforce the default judgment, Jerez sued in the United States district court for the Southern District of Florida. The defendants again defaulted. The court granted full faith and credit to the Florida state court judgment and granted Jerez judgment for $200 million plus interest. The Florida district court made no mention of the basis for its jurisdiction.

Jerez registered the Florida district court's default judgment in the United States district court for the District of Columbia. He also applied for various writs of attachment on certain patents and trademark registrations held by alleged agencies and instrumentalities of Cuba; the latter, together with intervenor Camara de Comercio, manager of a trademark on Cuban cigars, are collectively the appellees in this action. The history of the successive writs is tangled and irrelevant to the outcome of the case.

The appellees moved to vacate a writ of attachment that had been issued, while Jerez cross-moved for an order to show cause why a new writ of attachment should not issue against them. A magistrate judge found that the Florida state and district courts lacked jurisdiction under the FSIA to grant the default judgments, and accordingly granted the appellees' motions to vacate the writ. *Jerez v. Republic of Cuba*, 777 F. Supp. 2d 6 (D.D.C. 2011). The district judge overruled Jerez's objections to the magistrate judge's order, *Jerez v. Republic of Cuba*, 964 F. Supp. 2d 52 (D.D.C. 2013), and issued an order to that effect. We affirm the district court.

4

* * *

A default judgment rendered in excess of a court's jurisdiction is void. See *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1181 (D.C. Cir. 2013). Thus, a court asked to enforce a default judgment must entertain an attack on the jurisdiction of the court that issued the judgment. If it finds that the issuing court lacked jurisdiction, it must vacate the judgment.

Then-Judge Ginsburg put the rules clearly and succinctly in *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543 (D.C. Cir. 1987):

> A defendant who knows of an action but believes the court lacks jurisdiction over his person or over the subject matter generally has an election. He may appear, raise the jurisdictional objection, and ultimately pursue it on direct appeal. If he so elects, he may not renew the jurisdictional objection in a collateral attack. . . .
>
> Alternatively, the defendant may refrain from appearing, thereby exposing himself to the risk of a default judgment. When enforcement of the default judgment is attempted, however, he may assert his jurisdictional objection. If he prevails on the objection, the default judgment will be vacated.

*Id.* at 1547. See also *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982); RESTATEMENT (SECOND) OF JUDGMENTS § 65 cmt. b (1982).

Jerez points to *Insurance Corp. of Ireland*, where the Court said that "principles of res judicata apply to jurisdictional determinations." *Insurance Corp. of Ireland*,

456 U.S. at 702 n.9. He also cites language from a number of cases to the effect that a judgment rendered by a court assuming subject-matter jurisdiction is preclusive, even if the judgment was incorrect, as long as the court did not "plainly usurp jurisdiction." *Weininger v. Castro*, 462 F. Supp. 2d 457, 475 (S.D.N.Y. 2006) (citing *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 155 n.2 (2d Cir. 1996); *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)). But those principles apply not to default judgments but only to *contested* cases, where the defendant "had an opportunity to litigate the question of subject-matter jurisdiction." *Insurance Corp. of Ireland*, 456 U.S. at 702 n.9. It is clear from the context of the Supreme Court and circuit court cases that "opportunity" means not only awareness of the litigation but the defendant's actually appearing in it. See *id*.; *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376-78 (1940); *Nemaizer*, 793 F.2d at 65. In contrast, a defendant that has never appeared is always free under *Insurance Corp. of Ireland* and *Practical Concepts* to assert a jurisdictional attack later, in the court where enforcement of the default judgment is sought, and to have its jurisdictional objections considered de novo. See *Practical Concepts*, 811 F.2d at 1547. To the extent that *Weininger* suggests the contrary, we respectfully disagree (and are in any event precluded from agreement by *Practical Concepts* and *Bell Helicopter*).

We would reach the same result if we approached the judgment of the Florida state court through the lens of the Full Faith and Credit Act, 28 U.S.C. § 1738. Under the Act, federal courts are "to accept the rules chosen by the State from which the judgment is taken," including the rules with respect to jurisdiction. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982); see also *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985). Florida law, like federal law, calls for a de novo examination of the Florida state court's jurisdiction: "A judgment entered by a court which

lacks subject matter jurisdiction is void and subject to collateral attack under [Florida] rule 1.540 at any time." *McGhee v. Biggs*, 974 So.2d 524, 526 (Fla. Dist. Ct. App. 2008). And if the issuing court "did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 705 (1982).

The FSIA contains a separate provision regarding default judgments, 28 U.S.C. § 1608(e), but it does not controvert the principles of *Practical Concepts*. The statute provides that no "judgment by default shall be entered by a court . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This provides foreign sovereigns a special protection akin to that assured the federal government by Fed. R. Civ. P. 55(e). See *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2d Cir. 1994); RESTATEMENT (FOURTH) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 463 reporters' note 2 (Preliminary Draft No. 2, 2014). The rationale for such extra protection of sovereigns is that "the government is sometimes slow to respond and that the public fisc should be protected from claims that are unfounded but would be granted solely because the government failed to make a timely response." *Marziliano v. Heckler*, 728 F.2d 151, 157-58 (2d Cir. 1984). In providing this additional protection, Rule 55(e) obviously complements rather than replaces the res judicata principles governing a defendant's challenge to jurisdiction.

The process required by § 1608(e) is therefore a supplement to, not a substitute for, the right of a foreign sovereign defendant who has not appeared in the judgment-granting court to obtain de novo assessment of his jurisdictional objections. In *Commercial Bank of Kuwait*, for example, the court of appeals initially addressed jurisdiction

independently, 15 F.3d at 241, and then reviewed the district court's application of § 1608(e), *id*. at 241-42. To the extent that the decision in *Weininger* rests on a view that the mandate of §1608(e) is a substitute for the ordinary rules of res judicata, see 462 F. Supp. 2d at 475, we again respectfully disagree.

Finally, the jurisdiction of the Florida district court, which issued a default judgment on the strength of the state court's judgment, is equally subject to de novo consideration here and presents no additional questions.

\* \* \*

We turn now to a de novo assessment of the Florida state court's jurisdiction.

The FSIA, 28 U.S.C. §§ 1602-11, is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Under the FSIA, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. If no exception applies, then the court lacks subject-matter jurisdiction. *Mwani v. bin Laden*, 417 F.3d 1, 15 (D.C. Cir. 2005).

Jerez argues that two statutory exceptions apply here: the non-commercial tort exception, 28 U.S.C. § 1605(a)(5), and the terrorism exception, which at the relevant time was codified as 28 U.S.C. § 1605(a)(7) (2006).

The non-commercial tort exception provides jurisdiction for cases alleging "personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any

official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5). "[B]oth the tort and the injury must occur in the United States." *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C. Cir. 1984). "Congress' primary purpose in enacting § 1605(a)(5) was to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States, for which liability is imposed under domestic tort law." *Amerada Hess*, 488 U.S. at 439-40.

The problem for Jerez is that the defendants' alleged tort—purposefully injecting him with hepatitis C, otherwise subjecting him to conditions that caused hepatitis C, and failing to warn him of the virus—occurred in Cuba. This is obvious as to the first two. As to the failure to warn, to the extent that such warnings might have had any value to Jerez after he reached the United States, the omissions might seem to have taken place in the United States. But none of the defendants sued here was within the United States, and we agree with the district court that under those circumstances the omissions cannot reasonably be said to have occurred within the United States. *Jerez*, 964 F. Supp. 2d at 56-57. Jerez has suggested that unnamed representatives in the Cuba Interest Section in Washington similarly failed to warn him, but has afforded no reason to believe that these representatives were aware of any relevant information. *Id*. at 57.

To overcome this difficulty, Jerez argues that the virus continues to replicate in his body even now, and that "each deployment (through such viral replication) of the biological agent is an independent event" and "a separate and distinct tort." But the continued replication of hepatitis C and Jerez's cirrhosis of the liver describe an ongoing *injury* that he suffers in the United States as a result of the defendants' acts in Cuba. The law is clear that "the entire tort"—including not only the injury but also the act precipitating that injury—must occur in

the United States. *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1525 (D.C. Cir. 1984).

Jerez seeks to reinforce the redeployment analysis by analogizing the defendants' actions to a foreign agent's delivery into the United States of an anthrax package or a bomb. But here the defendants' infliction of injury on Jerez occurred entirely in Cuba, whereas the infliction of injury by the hypothetical anthrax package or bomb would occur entirely in the United States.

Jerez's invocation of the FSIA's terrorism exception is equally problematic. In the version operative when Jerez sued in Florida, the statute provided an exception to sovereign immunity for cases alleging "personal injury or death that was caused by an act of torture." 28 U.S.C. § 1605(a)(7) (2006). Jurisdiction is subject to two conditions: first, the state must have been "designated as a state sponsor of terrorism . . . at the time the act occurred," or it must have been designated later because of the act in question; and second, the claimant must have been "a national of the United States . . . when the act upon which the claim is based occurred." *Id.* (That section has since been replaced by 28 U.S.C. § 1605A.)

Jerez fails to satisfy either of these two independent conditions. First, Cuba was not designated a state sponsor of terrorism until 1982, and the defendants subjected Jerez to torture in 1970 and 1971. Further, Cuba was designated a state sponsor not because of the torture inflicted on Jerez, but because of "support for acts of international terrorism" such as those committed by the terrorist group M-19. *Regulation Changes on Exports: Hearing Before the Subcomm. on Near E. & S. Asian Affairs of the S. Comm. on Foreign Relations*, 97th Cong. 13 (1982) (statement of Ernest Johnson, Jr., Deputy Assistant Secretary for Economic Affairs, Department of State).

Faced with these obstacles, Jerez again invokes the redeployment theory—that hepatitis C continues to replicate in his body, daily inflicting new acts of torture. Now that Cuba is designated as a state sponsor of terrorism and he is a citizen of the United States, he reasons, the continued replication of the virus in his body constitutes a stream of contemporaneous acts of torture and thus satisfies both requirements of the terrorism exception. But in ordinary language the ongoing replication of hepatitis C and the cirrhosis of the liver are the injuries that Jerez is suffering, not acts of torture. Those acts occurred in Cuba before 1982, before Jerez became a United States national and before Cuba was designated a state sponsor.

Because no statutory exception to sovereign immunity under the FSIA applies, the Florida state court and the Florida district court lacked subject-matter jurisdiction. See *Amerada Hess*, 488 U.S. at 433. Their default judgments are therefore void. As a result there is no legal basis for the writ of attachment that Jerez seeks and the appellees are entitled to grant of their motion to vacate the previously outstanding writ. See *Practical Concepts*, 811 F.2d at 1547. Accordingly we need not address the appellees' other arguments.

* * *

The judgment of the district court is

*Affirmed*.