# United States Court of Appeals
## For the First Circuit

No. 17-2011

SHERRY SULLIVAN,

Plaintiff, Appellant,

v.

REPUBLIC OF CUBA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Kayatta, Circuit Judges.

David J. Van Dyke and Lynch & Van Dyke, P.A. on brief for
appellant.

May 22, 2018

LYNCH, Circuit Judge.  In 2009, a Maine Superior Court awarded the plaintiff, Sherry Sullivan ("Sullivan"), a default judgment of $21 million against the Republic of Cuba for the alleged "extrajudicial killing" of her father, said to be a covert U.S. agent.  Sullivan sought to enforce this judgment in federal district court in 2016.  When Cuba again failed to appear, Sullivan moved for a default judgment in federal court as well.  The district court denied Sullivan's motion and dismissed her suit for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-1611.  Sullivan v. Republic of Cuba, 289 F. Supp. 3d 231, 246 (D. Me. 2017).  We affirm.

I.

Sherry Sullivan's father, Geoffrey Sullivan ("Mr. Sullivan"), disappeared in October 1963 while serving in the Army National Guard.  Id. at 233.  Sullivan was a child at the time. She has since dedicated much of her life to discovering the truth about his disappearance, including "contacting dozens of federal agencies and officials" and filing a Freedom of Information Act ("FOIA") request.  Id. at 235.  Based on her research, Sullivan concluded that her father was captured during a covert mission against Fidel Castro, was incarcerated by the Castro regime, and eventually died while in the custody of the Cuban government sometime after 1982.

In 2007, Sullivan filed a wrongful-death suit against Cuba in Maine Superior Court. Cuba was properly served and did not appear in the case. A Maine Superior Court entered default judgment for Sullivan on August 10, 2009. After conducting a hearing, at which Cuba also did not appear, the court awarded Sullivan $21 million in damages for loss of support, severe emotional distress, and damages to her father's estate, including compensation for his pain and suffering. Sullivan was the sole witness at the hearing. The court issued a memorandum detailing its factual findings and legal conclusions said to be in support of its award. That memorandum tracked the proposed findings and conclusions Sullivan had submitted to the court and adopted them virtually verbatim. We recount the portions relevant to this appeal.

According to the Maine Superior Court, Mr. Sullivan and another member of the National Guard, Alexander Rorke, Jr., participated in a series of covert missions in Cuba and Central America against Castro's regime from 1960 to 1963. In the fall of 1963, the two men flew a plane from Florida, purportedly to go "lobster hauling" in Honduras. They actually traveled to various cities in Mexico before leaving for an "undisclosed location" on October 1, 1963.

The court adopted Sullivan's proposed finding that, on this journey, "Mr. Sullivan was shot down over Cuba . . . and had

been imprisoned by the Castro regime in Cuba . . . in violation of international law, thereafter." The court based its conclusion on second- and third-hand reports, provided by Sullivan, of those who had witnessed or heard of Mr. Sullivan's capture and subsequent detention in Havana. The court also adopted Sullivan's proposed finding that Cuba "intentionally . . . caused the indeterminate, undisclosed and illegal incarceration of Mr. Sullivan, which . . . has culminated in the legally-declared death of Mr. Sullivan and which constitutes an extrajudicial killing under applicable law." The court supported this conclusion by noting that Mr. Sullivan had been "declared legally dead" by the United States Social Security Administration as of 1963.[1]

Based on these factual findings, the court concluded that it had subject matter jurisdiction over Sullivan's suit. Although the FSIA generally bars suits against foreign sovereigns, the court adopted Sullivan's proposed legal conclusion that Cuba did not have immunity in this case because its "extrajudicial killing" of Mr. Sullivan fell under the terrorism exception to the FSIA. See 28 U.S.C. § 1605A(a)(1) (originally enacted as 28 U.S.C.

---

[1]    Although the record is unclear as to whether Sullivan or her mother applied to have Mr. Sullivan declared legally dead, Sullivan admitted at a hearing before the federal district court that "she has benefited from a Social Security Administration determination that [her father] died in 1963." Sullivan, 289 F. Supp. 3d at 246.

- 4 -

§ 1605(a)(7)). The court concluded that "as the successor to, heir to, and guardian of her father's estate," Sullivan was entitled to the damages enumerated above.

Over the next seven years, Sullivan did not collect any portion of her $21 million damages award. On June 21, 2016, she filed suit in federal district court to enforce her default judgment. Cuba again did not appear after being properly served. Sullivan, 289 F. Supp. 3d at 235. On May 12, 2017, Sullivan moved for entry of default. Id.

The district court was concerned about the validity of the state court's default judgment and ordered further briefing. Specifically, the court asked Sullivan to address whether the Maine Superior Court had subject matter jurisdiction over the original action and whether there was sufficient evidence of an "extrajudicial killing" to warrant entry of default against Cuba. Id. at 235-36. After considering Sullivan's submission, the district court scheduled a hearing for August 28, 2017. Id. at 237.

Sullivan presented two witnesses at the hearing: herself and an attorney.[2] Sullivan primarily testified regarding evidence

---

[2] The attorney only testified as to Sullivan's incentive for filing suit in federal court: she needed a final judgment issued by a federal district court in order to collect her award from a designated fund established by the Justice for United States Victims of State Sponsored Terrorism Act, 34 U.S.C. § 20144. The attorney offered no testimony as to Mr. Sullivan's disappearance

that -- in her view -- proved her father was imprisoned in Cuba into the early 1990s.  Id.  She introduced several exhibits, including:

- A letter from her mother, Cora Sullivan, indicating that Cora had received information about Mr. Sullivan's plane crash and imprisonment in Cuba;

- A compilation of second- and third-hand reports of sightings of Mr. Sullivan in Cuban prisons;

- Notes from researchers of the show "Unsolved Mysteries," which featured Mr. Sullivan's disappearance; and

- A sworn affidavit by Stephen Scherer stating that a security guard at his former job had mentioned encountering a "white American" who "claimed to be a private pilot" in a Cuban prison.  Id. at 237-38.

Sullivan also submitted additional exhibits after the hearing, including two purported government documents that confirmed Mr. Sullivan's plane had crashed after departing Mexico, and indicated that "rumors emanating from Cuban refugees" suggested Mr. Sullivan may have survived the crash in Cuba.  Id. at 238-39.

After considering all of Sullivan's proffer, and without ruling on whether the items were admissible, the district court denied her motion for default judgment and dismissed the

---

or as to other matters pertinent to the applicability of the terrorism exception.  Id. at 237.

action.  The district court held that it lacked subject matter jurisdiction over the suit because of Sullivan's failure to "show[] that the terrorism exception to foreign sovereign immunity applie[d]."  Id. at 244.  Specifically, the district court disagreed with the Maine Superior Court's conclusion that Mr. Sullivan was "extrajudicially killed" by Cuba for purposes of the FSIA, finding that Sullivan "ha[d] not proffered any evidence" to that effect.  Id.  Sullivan timely appealed.

## II.

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989).  The Republic of Cuba is presumptively immune from suit unless Sullivan can prove that its alleged conduct falls under one of the exceptions specified in the FSIA.  Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993).

Sullivan argues that the district court erred in dismissing her complaint because the Maine Superior Court had expressly found that the terrorism exception to the FSIA applies to the alleged extrajudicial killing of her father.  Sullivan asserts that by "'looking behind' the factual findings of the Maine Judgment and determining . . . that there was no evidence of an extra-judicial killing," the district court violated the Full Faith and Credit Act ("FFCA"), 28 U.S.C. § 1738, which requires

"judicial proceedings" to be given "the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."  We find no error and affirm the dismissal of this action.

A.

We assume arguendo that the FFCA applies and find that the district court's independent assessment of subject matter jurisdiction did not violate the Act.  As a matter of state law, Sullivan's best possible argument is that the Maine court gave her a binding judgment to which full faith and credit must be given. She cannot prevail even on that argument.

Maine law expressly permits litigants to collaterally attack a default judgment based on the issuing court's lack of subject matter jurisdiction.  See Hawley v. Murphy, 736 A.2d 268, 271 (Me. 1999) (holding that "an entry of default against an individual does not serve as a bar to that individual's right to challenge the subject matter jurisdiction of the court").  That concept is also embodied in Me. R. Civ. P. 12(h)(3), which says, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (emphasis added).  As such, even if the Maine Superior Court's default judgment were to be accorded full faith and credit, a federal court would not be precluded from

- 8 -

determining, de novo, whether the state court had subject matter jurisdiction to enter that judgment.[3]

But Sullivan may not even be entitled to argue that the Maine judgment should be accorded full faith and credit. Two of our sister circuits, in decisions under the FSIA, have held that, as a matter of federal law, the FFCA does not apply to default judgments rendered in excess of the court's subject matter jurisdiction. See Vera v. Republic of Cuba, 867 F.3d 310, 320 (2d Cir. 2017); Jerez v. Republic of Cuba, 775 F.3d 419, 423 (D.C. Cir. 2014). These circuits cite the Supreme Court's decision in Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Ass'n, 455 U.S. 691 (1982), which expressly held that "before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter . . . full faith and credit

---

[3] No Maine court has directly addressed whether a court asked to enforce a default judgment should accord a degree of deference to the issuing court's jurisdictional findings of fact. Indeed, under Maine law, "the question of the preclusive effect of facts established by default" is an open one. See McAlister v. Slosberg (In re Slosberg), 225 B.R. 9, 14-15 (Bankr. D. Me. 1998). However, given that the Supreme Judicial Court of Maine has held that a court's determination of subject matter jurisdiction in a default judgment is not binding on future courts, see Hawley, 736 A.2d at 271, there is no reason why the superior court's jurisdictional findings of fact should nevertheless command deference.

need not be given." Id. at 705. We need not decide, however, whether the FFCA applies here.

We hold that the district court was entitled to independently review whether Sullivan's case fell within the terrorism exception to the FSIA.

B.

We turn to whether the district court correctly dismissed Sullivan's suit for lack of subject matter jurisdiction under the FSIA. In so doing, we review the district court's findings of fact for clear error and its legal conclusions de novo. Vera, 867 F.3d at 315.

The terrorism exception to the FSIA expressly permits suits against foreign states for "personal injury or death" caused by an act of terrorism, such as an "extrajudicial killing." 28 U.S.C. § 1605A(a)(1). To invoke this exception, Sullivan must establish that (1) Cuba committed an "extrajudicial killing," which is defined, by cross-reference to the Torture Victim's Protection Act ("TVPA"), as "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court," see id. § 1605A(h)(7) (citing Pub. L. No. 102-256, § 3(a), 106 Stat. 73, 73 (1992)); and that (2) Cuba was "designated as a state sponsor of terrorism at the time the [extrajudicial killing] occurred" or was later "so designated as a result of such act,"

- 10 -

id. § 1605A(a)(2)(A)(i)(I). The district court correctly determined that Sullivan failed to establish the first prong.

The record is empty of "any evidence that [Sullivan's] father was the victim of an intentional killing by Cuba and that any such killing was committed in the absence of legal process." Sullivan, 289 F. Supp. 3d at 244. At best, Sullivan's second- and third-hand reports -- e.g., her mother's letter, the government documents, and Scherer's affidavit, even assuming admissibility -- give rise to a plausible inference that her father's plane was shot down over Cuba and that he was captured and incarcerated by the Cuban government into the early 1990s (well after Cuba was designated a state sponsor of terrorism in 1982). That is far from enough.

Sullivan provided no evidence that Mr. Sullivan was the subject of a "deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court." Pub. L. No. 102-256, § 3(a), 106 Stat. 73, 73 (1992). The Maine Superior Court excused this failure by ruling that "the incarceration . . . of Mr. Sullivan, which has culminated in the legally-declared death of Mr. Sullivan[,] . . . constitutes an extrajudicial killing under applicable law."[4] As the district

---

[4] But, as noted above, the declaration of death was made by the Social Security Administration, pursuant to its own regulations, which have nothing to do with whether the cause of death was an "extrajudicial killing."

- 11 -

court astutely pointed out, this conclusion has no basis under any reading of the FSIA or the TVPA. In any event, Mr. Sullivan was declared legally dead in 1963, well before Cuba was designated a state sponsor of terrorism.

Sullivan's only rejoinder is that this court should join the D.C. Circuit in what she says was that court's lowering of the evidentiary burden where the defendant is a former or current state sponsor of terrorism who refuses to submit to discovery. See Han Kim v. Democratic People's Republic of Korea, 774 F.3d 1044, 1045 (D.C. Cir. 2014). She misreads the case. The court there did say that "[r]equiring a plaintiff to produce direct, firsthand evidence of the victim's torture and murder would . . . thwart the purpose of the terrorism exception: holding state sponsors of terrorism accountable for torture and extrajudicial killing." Id. However, the considerations here are quite different, and we would be reluctant to join Sullivan's reading of Han Kim. She would fail to meet her burden of proof even if such a relaxed evidentiary standard were applied.

Han Kim is distinguishable for many reasons. There, the district court denied the plaintiffs' motion for default judgment against North Korea because they provided no "first-hand" evidence of their father's torture and subsequent death at the hands of the North Korean government. Id. The court of appeals reversed, finding that the plaintiffs had produced "admissible record

- 12 -

evidence . . . that North Korea abducted Reverend Kim, that it invariably tortures and kills political prisoners, and that through terror and intimidation it prevents any information about those crimes from escaping to the outside world." Id. Further, the court noted that North Korea had long been "a mainstay on the State Department's list of terror sponsors." Id. at 1046. Here, Sullivan failed to provide any evidence, circumstantial or otherwise, that the Cuban government killed her father after keeping him incarcerated for at least twenty years, let alone that Cuba acted extrajudicially.

Because Sullivan cannot establish that the terrorism exception applies, the district court correctly held that it lacked subject matter jurisdiction.

### III.

We affirm the dismissal of this action.