# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 26, 2021          Decided July 6, 2021

No. 20-7092

BUDHA ISMAIL JAM, ET AL.,
APPELLANTS

v.

INTERNATIONAL FINANCE CORPORATION,
APPELLEE

Consolidated with 20-7097

Appeals from the United States District Court
for the District of Columbia
(No. 1:15-cv-00612)

*Richard L. Herz* argued the cause for appellants. With him on the briefs were *Marco Simons* and *Michelle Harrison.*

*Henry C. Su* was on the brief for *amici curiae* Center for International Environmental Law, et al. in support of appellants.

*Jeffrey T. Green* argued the cause for appellee. With him on the brief were *Dana Foster* and *Maxwell J. Kalmann. Marisa S. West* entered an appearance.

Before: ROGERS and TATEL, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

Concurring opinion by *Senior Circuit Judge* RANDOLPH.

ROGERS, *Circuit Judge*: Appellants allege that the International Finance Corporation negligently lent funds to a power-generation project in India, which damaged their environment, health, and livelihoods. Because the gravamen of appellants' complaint is injurious activity that occurred in India, the United States' courts lack subject-matter jurisdiction, *see OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35–36 (2015), and the district court's dismissal on that ground is affirmed.

**I.**

Appellants are residents of Gujarat, India, a government entity from the same region, and a nonprofit focused on fishworkers' rights. The International Finance Corporation ("IFC") is an international organization, established by Articles of Agreement among its 185 member countries.[1] Appellants' allegations have been fully described in prior opinions. *See Jam v. Int'l Fin. Corp.* (*Jam II*), 139 S. Ct. 759, 765–67 (2019); *Jam v. Int'l Fin. Corp.* (*Jam I*), 860 F.3d 703, 704 (D.C. Cir. 2017); *Jam v. Int'l Fin. Corp.* (*Jam III*), 442 F. Supp. 3d 162,

---

[1] IFC Articles of Agreement arts. I–II, *as amended through* Apr. 16, 2020, https://www.ifc.org/wps/wcm/connect/d057dbd5-4b02-40f8-8065-9e6315c5a9aa/2020-IFC-AoA-English.pdf?MOD=AJPERES&CVID=n7H2n-h; World Bank, *IFC Member Countries* (Apr. 16, 2019), https://www.worldbank.org/en/about/leadership/members#3.

166–69 (D.D.C. 2020). For present purposes, a summary will suffice: Appellants allege that they have been injured by operations of the coal-fired Tata Mundra Power Plant (the "Plant"), which is located in India and owned and operated by Coastal Gujarat Power Limited ("CGPL"). IFC loaned funds for the project and conditioned disbursement of those funds on CGPL's compliance with certain environmental standards. Appellants allege that IFC negligently failed to ensure that the Plant's design and operation complied with these environmental standards but nonetheless disbursed funds to CGPL. These supervisory omissions and disbursement decisions allegedly took place at IFC's headquarters in the United States, specifically in Washington, D.C.

The district court initially dismissed the case for lack of subject-matter jurisdiction, based on then-binding circuit precedent that international organizations like IFC enjoyed virtually absolute immunity from suit. *Jam v. Int'l Fin. Corp.*, 172 F. Supp. 3d 104, 108–09, 112 (D.D.C. 2016). This court affirmed in *Jam I*, 860 F.3d at 708, but the Supreme Court reversed, holding that such organizations possess more limited immunity equivalent to that enjoyed by foreign governments, *Jam II*, 139 S. Ct. at 765. Applying the new standard on remand, the district court in February 2020 again ruled that IFC was immune from appellants' claims. *Jam III*, 442 F. Supp. 3d at 179. The district court in August 2020 denied as futile appellants' motion for leave to amend their complaint, reasoning that IFC would remain entitled to immunity, even crediting the allegations of the proposed amended complaint. *Jam v. Int'l Fin. Corp.*, 481 F. Supp. 3d 1, 4, 13–14 (D.D.C. 2020).

4

## II.

The parties dispute whether the district court's February 2020 order granting IFC's renewed motion to dismiss the complaint was final and appealable. The court need not resolve that issue. Appellants timely filed a motion to amend their complaint pursuant to Federal Rule of Civil Procedure 15 or, in the alternative, Rule 59(e). The pendency of such a motion tolls the time to appeal. FED. R. APP. P. 4(a)(4)(A)(iv); *Obaydullah v. Obama*, 688 F.3d 784, 788 (D.C. Cir. 2012). After the district court's August 2020 denial of the motion for leave to amend the complaint, appellants timely filed a notice of appeal. The August 2020 decision was a final, appealable order. Therefore, no matter whether the February decision was final, the appeal is timely, and this court has jurisdiction under 28 U.S.C. § 1291. We turn to the merits.

Under the International Organizations Immunities Act ("IOIA"), international organizations "enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract." 22 U.S.C. § 288a(b). In *Jam II*, the Supreme Court held that the IOIA confers on international organizations the same immunity available to foreign governments under the Foreign Sovereign Immunities Act ("FSIA"). 139 S. Ct. at 764–66, 772.

The FSIA, in turn, provides that foreign states are immune from the jurisdiction of United States' courts, 28 U.S.C. § 1604, subject to a handful of exceptions, *id.* §§ 1605–07. At issue in this appeal is the commercial activity exception, which provides that a foreign state shall not be immune from jurisdiction

> in any case . . . in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

*Id.* § 1605(a)(2).  The third clause, concerning foreign activity with a direct effect in the United States, is not at issue here.

The "based upon" phrase in the commercial activity exception requires courts to identify the "gravamen" of the lawsuit:  "[I]f the 'gravamen' of a lawsuit is tortious activity abroad, the suit is not 'based upon' commercial activity within the meaning of the FSIA's commercial activity exception." *Jam II*, 139 S. Ct. at 772.  In *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993), the Supreme Court explained that in identifying what an action is "based upon" — its "gravamen" — courts should examine "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Id.* at 357.  There, the plaintiff had been hired to work in a government-owned Saudi Arabian hospital. *Id.* at 351–52.  The plaintiff alleged that after he reported safety defects at the hospital, Saudi authorities detained and tortured him.  *Id.* at 352–53.  The Court held that the lawsuit was not based upon domestic commercial activity, despite allegations that Saudi Arabia had tortiously failed to warn the plaintiff of the risks when it recruited him in the United States.  *Id.* at 358, 363.

More recently, in *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015), the Supreme Court clarified that the gravamen analysis does not require courts to undertake a "claim-by-

claim, element-by-element analysis," but rather to "zero[] in on the core of [the] suit." *Id.* at 34–35. "What matters is the crux — or, in legal-speak, the gravamen — of the plaintiff's complaint, setting aside any attempts at artful pleading." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 755 (2017). In *Sachs*, the plaintiff had purchased a Eurail pass from a travel agent in the United States and was later injured by a government-owned railway car in Austria. 577 U.S. at 30. The plaintiff sued for, among other things, failure to warn that the train and boarding platform were defectively designed. *Id.* The Court concluded that the gravamen of the suit was tortious activity abroad, because the plaintiff's claims all "turn[ed] on the same tragic episode in Austria, allegedly caused by wrongful conduct and dangerous conditions in Austria, which led to injuries suffered in Austria." *Id.* at 35. The domestic sale of the railway pass did not change the result because there was "nothing wrongful about the sale of the Eurail pass standing alone. Without the existence of the unsafe boarding conditions in [Austria], there would have been nothing to warn Sachs about when she bought the Eurail pass." *Id.* at 35–36. However the suit was "fram[ed]," "the incident in [Austria] remain[ed] at its foundation." *Id.* at 36. Any other approach, the Court observed, "would allow plaintiffs to evade the [FSIA's] restrictions through artful pleading." *Id.*

In the instant case, paralleling *Sachs*, all of appellants' claims turn on allegedly wrongful conduct in India, which has led to injuries suffered in India. The Washington, D.C. decisionmaking that appellants criticize consists of providing funding that facilitated conduct in India. Absent the operation of the Plant in India, or appellants' injuries in India, there would have been nothing wrongful about IFC's disbursement of funds. Even crediting the allegation that the Plant would not have been built without IFC's funding, *see* Prop. Am. Compl. ¶ 57, the operation of the Plant is what actually injured

appellants, *cf. Sachs*, 577 U.S. at 34, and the manner of its construction and operation is the crux of their complaint. The gravamen of appellants' lawsuit is therefore conduct that occurred in India, not in the United States, and IFC consequently cannot be subjected to the jurisdiction of United States' courts under the commercial activity exception. That conclusion holds for each of the various theories that appellants have pleaded: negligent supervision, public nuisance, trespass, breach of contract to third party beneficiaries, and others.

Appellants' contrary arguments are unpersuasive. At the outset, appellants make the bold suggestion that *Jam I* "previously held" that IFC would not be immune under the FSIA, that such a result survived *Jam II*, and that it remains binding circuit precedent. Appellants' Br. 19. This is a transparent misreading of *Jam I*, which in fact held that IFC had "virtually absolute" immunity under the IOIA. 860 F.3d at 705–06. Insofar as *Jam I* suggested a potential outcome of the FSIA analysis it rejected, *see id.* at 707, that dictum is not binding circuit precedent, *see Doe v. Fed. Democratic Republic of Ethiopia*, 851 F.3d 7, 10 (D.C. Cir. 2017).

Appellants' principal contention is that the gravamen analysis must be categorically limited to the sovereign defendant's conduct, and correspondingly that the conduct of any non-sovereign entity must be ignored. *See* Appellants' Br. 15–17, 21–30. (Although IFC is not a "sovereign," the parties — and this opinion — use the term as a shorthand to include international organizations that enjoy sovereign-like immunity. *See generally Jam II*, 139 S. Ct. at 768.) Applying their proposed rule, appellants maintain that their lawsuit is "based upon" only IFC's decisionmaking in Washington, D.C., and that CGPL's operation of the Plant in India is irrelevant. Appellants' Br. 44–45. This view cannot be squared with *Sachs* and *Nelson*, which instruct courts to examine "the 'basis'

or 'foundation' for a claim, 'those elements that, if proven would entitle a plaintiff to relief,' and 'the "gravamen of the complaint."'" *Sachs*, 577 U.S. at 33–34 (alteration omitted) (citations omitted) (quoting *Nelson*, 507 U.S. at 357); *cf. also Nestle USA, Inc. v. Doe*, 593 U.S. ___ (2021) (slip op., at 3–5). There is no suggestion that the examination is restricted to the sovereign's conduct, especially where, as here, the core of appellants' complaint is that IFC enabled or failed to adequately supervise the conduct of a non-sovereign third party. Insofar as appellants purport to identify authority to the contrary, those cases are either distinguishable on their facts, pre-date *Sachs*, or both. *See, e.g.*, *Transamerican S.S. Corp. v. Somali Democratic Republic*, 767 F.2d 998, 1002–04 (D.C. Cir. 1985); *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1027 & n.22 (D.C. Cir. 1982); *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 814 (6th Cir. 2015); *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1108–09 (5th Cir. 1985).

IFC's textual arguments on this point are similarly unavailing. The commercial activity exception denies immunity in "any case . . . based upon a commercial activity carried on in the United States *by the foreign state*; or upon an act performed in the United States in connection with a commercial activity *of the foreign state* elsewhere[.]" 28 U.S.C. § 1605(a)(2) (emphasis added). Appellants interpret the italicized text to "bar courts from basing immunity on a third party's acts." Appellants' Br. 29. This argument essentially reads "based upon" out of the statute. Appellants' position is that a court must look only to the alleged acts of the sovereign and then determine whether those acts are commercial and have a geographical nexus to the United States. *Id.* at 15–16, 29–30. This approach skips a step required by the statute: determining what the case is "based upon." The text of the commercial activity exception does not

constrain the gravamen inquiry to only the sovereign acts alleged in the complaint or require courts to ignore the importance of third parties' conduct. Appellants' other textual arguments are no more persuasive. The congressional findings in 28 U.S.C. § 1602 concerning international law cannot overcome the operative language in § 1605. *Cf. Rothe Dev., Inc. v. U.S. Dep't of Def.*, 836 F.3d 57, 66 (D.C. Cir. 2016). And the statement in § 1606 — that "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances" — applies only "[a]s to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607." Since IFC is entitled to immunity under § 1605, the scope of liability specified by § 1606 is of no importance.

Appellants suggest that the "based upon" inquiry should function like a personal jurisdiction requirement, asking simply whether "there is a geographical nexus between [the] defendant's commercial activity and the United States." Appellants' Br. 30. Rather than determining the gravamen of the lawsuit, appellants therefore contend that courts should engage in a "defendant-focused 'minimum contacts inquiry[.]'" *Id.* at 32 (internal quotation marks omitted) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). This is markedly not the approach that the Supreme Court has taken to the FSIA. In *Sachs*, for example, the Court found it unnecessary to determine whether the seller of the railway pass had acted as the agent of the sovereign entity, 577 U.S. at 31, 35–36, which would have been critical to a minimum contacts analysis, *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320–21 (1945). Rather, the Court "zeroed in on the core of [the plaintiffs'] suit," the "wrongful conduct and dangerous conditions" abroad, which led to injuries suffered abroad. *Sachs*, 577 U.S. at 35. It was of no consequence whether the defendant had purposefully availed itself of the U.S. market

through ticket sales. *Cf. J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880–81 (2011).

Appellants warn against adopting a "last harmful act" requirement under the FSIA, in which "the sovereign must commit the last act preceding the injury, even though ordinary liability rules have no such limitation." Appellants' Br. 16. Like the Supreme Court's decision in *Sachs*, 577 U.S. at 36 & n.2, today's decision does not impose such a requirement. Rather, "the reach of our decision [is] limited," *id.* at 36 n.2, holding only that the gravamen of appellants' particular complaint is conduct occurring abroad.

Nor has IFC waived its immunity to appellants' lawsuit. This issue *was* actually decided by *Jam I*. 860 F.3d at 706–08. Appellants' petition for certiorari to the Supreme Court on that issue was not granted. *See* Petition for a Writ of Certiorari at i, 21, 24–27, *Jam v. Int'l Fin. Corp.*, No. 17-1011 (Jan. 19, 2018), *granted in part by* 138 S. Ct. 2026, 2026 (2018). Nor did the reasoning of *Jam II* undermine this court's conclusion on the waiver issue. *Jam I* thus remains law of the circuit as to IFC's purported waiver, and the present panel is bound thereby. *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996).

Accordingly, United States' courts lack subject-matter jurisdiction over appellants' complaint because their claims are not based upon activity carried on in the United States, and IFC has not waived its immunity to the claims. We therefore affirm the judgment of the district court dismissing the complaint.

RANDOLPH, *Senior Circuit Judge*, concurring,

A few days ago, before we issued this opinion, the Supreme Court decided *Nestle USA, Inc. v. Doe*, 593 U.S. ___ (2021). Justice Thomas's opinion for the Court in *Nestle* reinforces Judge Rogers' opinion for our court in this case.

*Nestle* answered this question — did plaintiffs "establish that 'the conduct relevant to the [Alien Tort Statute's] *focus* occurred in the United States.'" *Id.* at ___ (slip op., at 3–4) (quoting *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2101 (2016)) (emphasis added). Our decision answered the question whether the "*gravamen*" of Jam's suit was the defendant's activity in the United States. *See* 28 U.S.C. § 1605(a)(2); *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 33–34 (2015). The two statutes are different but the analysis is the same. It is the same because in this context there is no meaningful distinction between "focus" and "gravamen."

The *Nestle* plaintiffs alleged that the company aided and abetted forced labor in Ivory Coast by providing farms with resources "in exchange for the exclusive right to purchase cocoa." *Nestle*, 593 U.S. at ___ (slip op., at 2). Knowing that the Alien Tort Statute lacks extraterritorial reach, the plaintiffs claimed that Nestlé "made all major operational decisions from within the United States." *Id.* As the Ninth Circuit put it, "the [plaintiffs] had pleaded a domestic application of the [statute] . . . because the 'financing decisions originated' in the United States." *Id.* at ___ (slip op., at 3) (internal alterations omitted).

The Supreme Court disagreed. The Court stressed that "[n]early all the conduct that [the plaintiffs] say aided and abetted forced labor — providing training, fertilizer, tools, and cash to overseas farms — occurred in Ivory Coast." *Id.* at ___ (slip op., at 4–5). While the plaintiffs "pleaded as a general matter that 'every major operational decision by [Nestlé] is made or approved in the U.S.[,] . . . allegations of general

corporate activity — like decisionmaking — cannot alone establish domestic application of the [statute]." *Id.* at ___ (slip op., at 5). And the Court continued: "Because making 'operational decisions' is an activity common to most corporations, generic allegations of this sort do not draw sufficient connection between the cause of action [plaintiffs] seek . . . and domestic conduct." *Id.*

The same is true here. Jam failed to show how anything actionable was based upon something that occurred in the United States. *See* 28 U.S.C. § 1605(a)(2); *Sachs*, 577 U.S. at 33–34. Like the *Nestle* plaintiffs, Jam alleged that general corporate activity (loan decision-making and oversight) occurred at the defendant's headquarters, so the suit is "based upon" conduct in the United States. That is not enough. Although the International Finance Corporation's financing decisions originated in D.C., nearly all of the conduct that allegedly harmed Jam occurred in India. General allegations of decision-making in D.C. cannot alone transform this suit from one based upon conduct in India to one based upon conduct in the United States.